# CHARLESTON.

SHONK LAND CO. *et al. v.* JOACHIM *et al.*

(Two Cases)

Submitted November 6, 1923. Decided January 9, 1924.
Rehearing denied July 1, 1924.

1. APPEAL AND ERROR—*Appeal Not Dismissed as Moot as to Appellee Where Decision on Merits May Vitally Affect His Interests.*

Where a decree dissolves an injunction against the payment of school orders, issued under contracts made with a board of education, the lawfulness and validity of which contracts is the controlling question at issue, and an appeal has been awarded by this court, and it appears that, after the time given by the lower court for obtaining an appeal had expired, and before the granting of the appeal, nearly if not all of the orders had been paid to the holders by the sheriff, the appeal will not be dismissed upon motion of one of the appellees, who has been so paid, as involving only a moot case as to him. His interests may be vitally involved if the orders so paid are found to be void under the statute (section 12, c. 28A, Barnes' Code 1923). (p. 713).

2. SCHOOLS AND SCHOOL DISTRICTS—*Contracts Involving Expenditure of Money in Excess of Funds Legally at Disposal of Board of Education Unenforceable.*

Under said statute a board of education cannot lawfully make contracts for the building and repairing of schoolhouses and for furnishing the same at a time when such contracts would involve the expenditure of money in excess of funds legally at the disposal of the board. Such contracts so made, and the school orders issued thereunder, are void, and cannot be enforced. (p. 714).

3. SAME—*Void Contracts Not Made Lawful by School Orders Payable in Year Succeeding Work Done.*

Such void contracts cannot be made lawful by the issuance of school orders in discharge thereof, in the fiscal year succeeding that in which the work was done and the goods furnished, although in such succeeding year, when the orders were issued, the board would be enabled to pay the same out of the levies contemplated for that year. (p. 717).

4. CONTRACTS—WORK AND LABOR—*Contracts Malum Prohibitum Cannot be Subsequently Ratified; No Implied Promise to Pay for Benefits Received Under Contract Malum Prohibitum.*

A contract malum prohibitum cannot be subsequently ratified, and there is no implied promise to pay for benefits received thereunder.  (p. 719).

5. SCHOOLS AND SCHOOL DISTRICTS—*Written Contract for Purchase of School Furniture and Equipment Involving Payment by Future Tax Levies Held Void.*

A written contract for the purchase of schoolhouse furniture and equipment, made by a board of education at a time when the board had no funds legally at its disposal for such purpose, payment therefor to be made in the succeeding fiscal year, is void on its face under the statute above cited. It creates a debt which involves payment by future tax levies.  (p. 720).

6. EQUITY—*Will Refuse Aid to Either Party to Executory Contract Malum Prohibitum.*

Generally, a court of equity will not aid either party in the enforcement of a contract while it is yet executory, nor afford relief by annulling it, where that contract is prohibited by positive law declaring it void, as well as where it is malum in se as being contrary to public policy or good morals.  (p. 718).

LITZ, JUDGE, dissenting.

Appeal from Circuit Court, Kanawha County.

Separate suits by the Shonk Land Company and others against F. G. Joachim and others and against F. G. Joachim, Theodore Kundtz Company, and others.  From an order dissolving a temporary injunction, plaintiffs in each case appeal.    *Reversed; injunction perpetuated.*

*Price, Smith, Spilman & Clay,* for appellants.
*Koontz, Hurlbutt & Rivercomb,* for appellees.
*R. Kemp Morton,* amicus curiæ.

LIVELY, JUDGE:

The bill seeks to enjoin the board of education, Keeney and Vickers, Theodore Kundtz Company, a corporation, Henry

Walker, sheriff, and Jenkins, the county financial secretary, from paying or collecting certain indebtedness to Keeney and Vickers, and to the Kundtz Company, contracted by the board, either by laying a levy therefor or by the issuance and payment of school orders. The debts to Keeney and Vickers, for which they hold orders on the sheriff for payment, amount to $12,000 and $24,951.60, respectively; and the debt to Kundtz Company, for which no order has been issued, is $8,761.50. In December, 1920, the building and improvement fund for that fiscal year ending June 30, 1921, had been exhausted. The board, however, perceiving an urgent necessity for the repair of schoolhouses and the erection and furnishing of new schoolhouses to accommodate the increasing number of school children, entered into contracts with Keeney and Vickers for the repair of the houses and building of others. Vickers was to repair the houses south of the Kanawha river, and Keeney those north of the river, and furnish to the board itemized statements for work done and materials furnished, and they were to be paid $10 per day for overseeing the work and 15 per cent. on the gross sums spent, including purchases for stoves, brooms, and the like. They also built certain new schoolhouses in their respective territories. On April 29, 1921, the board placed a written order with Kundtz Company for desks and chairs for schoolhouses amounting to $8,761.50 f. o. b. factory, Cleveland, Ohio, for which the board agreed to pay by check on November 15, 1921. By an audit made by the tax commissioner it was ascertained, at the beginning of the fiscal year 1921-22, that the grand total of floating indebtedness in excess of funds at the disposal of the board, including orders issued and debts for which orders had not been issued, was $84,190.18. This floating indebtedness was included by the board in the August, 1921-22 budget, to be paid by levy for that year. The plaintiffs, large taxpayers, filed this bill to prevent the board from including in its budget the stated indebtedness to Keeney, Vickers, Kundtz Company, and others, and from laying taxes to pay same, and from the issuance, countersigning, and paying of orders already or which might be issued to pay such indebtedness, alleging that the orders

and claims were illegal and void because they represented obligations incurred by the board in the fiscal year 1920-21 after all the funds legally at the disposal of the board for that fiscal year had been exhausted, contrary to section 12, c. 126, Acts 1919 (Barnes Code 1923, c. 28A, § 12), which reads:

"It shall be unlawful for any county court, board of education, or council of a municipal corporation, or other body charged with the administration of the fiscal affairs of any county, school district or independent school district, or municipality to expend any money or to incur any obligation or indebtedness which such fiscal body is not expressly authorized by law to expend or incur. Nor shall any such fiscal body make any contract, express or implied, the performance of which, in whole or in part, would involve the expenditure of money in excess of funds legally at the disposal of such fiscal body, nor issue or authorize to be issued any certificate, order or other evidence of indebtedness which cannot be paid out of the levy for the current fiscal year or out of the fund against which it is issued. Nor shall any such tribunal attempt to lay any levy the rate whereof shall exceed the rate specified by law. Any indebtedness created, contract made or order or draft issued in violation hereof, shall be void and of no effect, and any money received thereon may be recovered from the person receiving the same by the fiscal body which created, made, or issued the indebtedness, contract order or draft."

The remainder of that section (too long to quote in full) makes any member of such fiscal body, who violates any provision of the act or participates in contracting any debt in violation of its terms, liable to the political division represented by him in such official capacity, or to any person prejudiced by his unlawful act; and also liable to fine and imprisonment as for a misdemeanor, and removal from office. Any taxpayer or the state tax commissioner may sue to recover from the offending individual members the money unlawfully expended, for the benefit of the treasury of the proper fiscal body. Keeney and Vickers answered the bill, claiming that their orders and claims were not illegal, because the houses were built and repaired for use in the succeeding year, and were properly payable out of the revenues

of the succeeding year, and because their claims as covered by the budget had been approved by the state tax commissioner, Attorney General, and county superintendent of schools. The defense is that the houses, supplies, and furniture could not be supplied after July 1, 1921, in time for the schools to operate in that fiscal year, and that the board had the right to make the contracts and pay for the same out of the funds of the succeeding year. Kundtz Company answered and exhibited the contract of April 29, 1921, for the desks and chairs, and say that this furniture was promptly shipped in May, 1921, and was intended for use in the schools during the succeeding fiscal year, and was to be paid out of the levies for the succeeding year, and that the funds for the succeeding year were legally at the disposal of the board for that purpose. It says, like Keeney and Vickers, that the increase in the school youth made it necessary that the furniture should be purchased at the time of the contract in order that it might be assembled and placed for the benefit of the schools for the ensuing year. The answer further says the furniture was received, accepted, and used by the board, and for that reason the board is liable to it for the value of the property, namely, the sum of $8,761.50, on quantum meruit, and asks for a decree for that sum as affirmative relief.

The decree of October, 1922, dissolved the temporary injunction in so far as Keeney and Vickers' claims were concerned, and the decree of February, 1923, dissolved the temporary injunction as to Kundtz Company, and found that the board was indebted to it $8,761.50, with interest, and directed the board to issue an order on the sheriff in favor of it for that sum, and directed the latter to pay it. Plaintiff's appeal from both decrees. There is little controversy of fact. The evidence discloses that there was great need for more schoolhouses and furniture at the time the contracts were made, and that condition had existed for many years in the district until there was insistent complaint. The board was trying to meet this situation, and adopted this method to remedy it. As a result it contracted indebtedness to the amount of $84,190.18 in excess of its revenues

as shown by the tax commissioner's audit. Its president frankly says it was intended and expected that the indebtedness should be paid out of the levies for the succeeding fiscal year, in order to relieve a condition which had become chronic and pressing. Construction of the new buildings and repairs on the old were contracted for and done in the fiscal year 1920-21 to be paid out of the levies for the fiscal year 1921-22, and the orders in question, one to Vickers for $24,951.60, and the other to Keeney for $12,000, for a part of the work and materials, were ordered to be issued by the board on July 4, 1921. The contract for desks and seats with Kundtz Company was made April 29, 1921, and the goods shipped the latter part of the following month f. o. b. Cleveland, Ohio, to be paid for November 15, 1921. There were no funds in the treasury of the board at the time these contracts were made out of which payment could be made. Are the contracts valid and enforceable? This is the question.

At the threshold a preliminary question arises upon the motion of Keeney to dismiss the appeal so far as he is concerned, because, he says, there is no substantial controversy now between him and appellants, for the reason that, after the lower court had dissolved the injunction, and after the stay for appeal had expired, and before an appeal was awarded by this court, the sheriff paid to him all of the orders representing his claim against the board, and therefore the questions originally involved are now moot, as to him. This motion is supported by affidavits; and the resistance thereto is supported by affidavits. The affidavits show that there is one order of $250 payable to Keeney which has not been paid, and is yet outstanding. If the orders paid were illegal and void, 'the statute provides that the board may recover from the person receiving payment any money received by him. The personal liability of Keeney for a return of the money received is indirectly involved in the appeal. If the debts paid by the board were illegal and void, plaintiffs, the tax commissioner, or the board may recover from the individual members of the board the money so illegally expended. So says the statute.

The decrees, if not erroneous, would prevent recovery. It is clear that the questions involved are not moot as to Keeney. He may be vitally interested in them. *Kaufman* v. *Mastin,* 66 W. Va. 99, 66 S. E. 92, 25 L. R. A. (N. S.) 855, and cases there cited; *Barbee* v. *Howard,* 66 W. Va. 631, 66 S. E. 1002.

It will be observed that both Keeney and Vickers and Kundtz Company interpose one common point of defense; namely, the urgent demand and necessity for preparation and furnishing of the schoolhouses to accommodate the school children in the succeeding year. The evidence shows an unusual condition of the schools in that regard. The district had become populous due to the rapid industrial development, and the school facilities had not kept apace. The schoolhouses were out of repair, more were urgently needed, and congestion was extreme. The compulsory attendance law had its effect to bring in more pupils. The crying need of rudimentary education for the children of the industrial workers in the shops and mines was not only recognized as a matter of public welfare, but as a matter of right. No doubt these matters influenced the state officers and the board in the formation of its budget for 1921-22, when the indebtedness in excess of funds amounting to $84,190.18 was included. This situation and these considerations have appealed to us. Tersely stated, it is a defense of justification on the ground of necessity, arising from an unusual condition. However, arguments of necessity and inconvenience have little weight. Many governmental restrictions and limitations are found to be inconvenient, and cannot be annulled on the plea of necessity. Another defense interposed by Kundtz Company (neither Keeney nor Vickers filing briefs) is that a proper interpretation of the statute quoted gives to the board the authority to contract in one year for a commodity to be used by the board wholly within the next year, and pay for it out of the funds levied in that next year. We cannot agree with this interpretation. The governmental policy for many years has been to put the levying bodies on a cash basis requiring each year's levy to take care of the contracts and expenditures for that year, and each year to

start off without indebtedness overhanging except such as. may have been voted by the taxpayers; that no contract, express or implied shall be made in one year, which will bind the future levies. A scandalous and startling condition in public finances had developed in many of the counties because of the carelessness, inefficiency or corruptness of some of the officials; and floating indebtedness of hundreds of thousands of dollars became existent in some of the larger counties. County and school drafts were below par, and were bought and sold like German marks. The statute under consideration is the result of evolution of law to remedy that condition and prevent its recurrence. It became more drastic and effective by each succeeding amendment. It is now criminal for a fiscal body to make any contract, express or implied, the performance of which, in whole or in part, would involve the expenditure of money in excess of funds. legally at its disposal, or issue any evidence of indebtedness. which cannot be paid out of the levy for the current fiscal year, or out of the fund against which it is issued; and any member of such fiscal body so violating the law may be made to pay the debt thus created, and removed from office. This. act was under consideration in *State* v. *Davis,* 74 W. Va. 261, 82 S. E. 207, where it was held that the statute as then written did not make the contract or draft issued in pursuance thereof void, and the sheriff could not resist payment because it had been issued in excess of funds. To meet. that decision, the statute was amended as it now stands, and makes the contract itself and the orders and evidences. of debt void and of no effect. One dealing with such fiscal. body must know its powers and limitations. He is charged with the knowledge that his contract in violation of the statute is void, and that his order or draft in pursuance thereof is worthless, and cannot be enforced, and, if paid voluntarily, may be recovered from him. He contracts at his peril. Formerly the onus was on the members of the fiscal body alone, and the thunderings of the statute were directed at them;. now the law says to the one dealing with the board, "You deal with your eyes open to the fact that you may lose your money, services or property by entering into and per-

fòrming a void and unenforceable contract." The public is protected against the board and the one dealing with it. The legislative policy is clear, and the statute must not be warped by construction to defeat it. The phrases "funds legally at the disposal of the fiscal body," and "which cannot be paid out of the levy for the current fiscal year," refer to the time when the contract is made, and not in futuro. No contract is valid which will bind the levies of future years, without authority from the people. *Davis* v. *County Court,* 38 W. Va. 104, 18 S. E. 373; *List* v. *City of Wheeling,* 7 W. Va. 501; *Spilman* v. *City of Parkersburg,* 35 W. Va. 605, 14 S. E. 279. But it is argued that this was not a contract for seats and desks entered into on April 29, 1921, which would bind the levy of the fiscal year 1921-22, but simply an "arrangement" by which the purchase and delivery of the goods could be expedited and made available for use when the schools started, and in truth it was a contract for the year 1921-22, and expressly made payable out of the levies for that year. It bears all the formalities of an executory contract. If by an "arrangement" funds could be thus obligated (without funds in the hands of the fiscal body) and payable in the next or subsequent year, payable as the future years came on, the levies of the future could be mortgaged by "arrangements," bringing about the former chaotic condition in fiscal affairs, which the legislature intended to prevent. An "arrangement" by which one person buys and another sells property at a stipulated price, the payment to be made at a time stated, would be viewed as a contract in the eyes of the law. This so called "arrangement" was illegal and void under the statute, either as an express or implied obligation to pay money. The funds available for that purpose were exhausted at the time it was made. There is no intimation of corrupt dealing and the board has received the desks and chairs, and presumably they have been placed in the schoolhouses. The price at which they were purchased was a reasonable one so far as the record shows. Shall the district be enriched in this manner to the loss of a person dealing with it in good faith? Shall this vendor be told to recover the price of the goods from the members of the board

who participated in making this prohibited contract, a remedy which may possibly be unavailing even if judgment be obtained? Kundtz Company, by counsel, asserts that the board, by acknowledgment of the possession of the property in August, 1921, and by providing for the raising of money by levy for that year to pay for it, ratified the ''arrangement'' made on April 29th of that year, thus ratifying the former purchase, or thus making a new purchase and a new promise to pay, and therefore there is an obligation on the board to pay under an implied contract of quantum valebant. No order on the sheriff was issued. ' (The decree directs that to be done.) Had there been an order issued to pay Kundtz Company, on July 4, 1921, it cannot be said that this would make a new contract. The statute says such order issued on a void contract is itself void; nor do we think an acknowledgment of the debt by an ex parte entry for payment would stand on any higher plane than an order on the sheriff in payment. The statute would be entirely emasculated if the board could, by putting off the time of payment under an illegal contract made void and prohibited as a misdemeanor by law, vivify the contract by the issuance of an order in the next year, or then providing for its payment.

Every such contract, however void and against good conscience, would be made valid by issuance of draft for its discharge, or by acknowledgment of record, which is no stronger. Many of our cases hold that, if the original obligation is void and its payment prohibited by law, it cannot be vivified by an attempt to pay it by the fiscal body or by its subsequent written acknowledgment of the obligation. *Davis* v. *County Court*, 38 W. Va. 104, 18 S. E. 373; *Bank* v. *County Court*, 28 W. Va. 273, where it was said on page 295 of the opinion:

> ''A transaction entered into with the fatal infirmity of being in violation of law cannot be purged of its infirmity by means of an estoppel; and no ratification can make good the act of a corporation or of an individual which is prohibited by law; for the act being void in its inception is incapable of ratification.''

In that case the county court had borrowed money to build

a courthouse, and given notes therefor signed by a duly auth-
orized agent. The suit was in assumpsit on the notes, and
the declaration contained the common counts. Recovery was
denied; this court holding that the county court had no power
to borrow money for that purpose and to execute notes; that
its acts were ultra vires and incapable of ratification. *Shinn*
v. *Board of Education,* 39 W. Va. 497, 20 S. E. 604; *Coberly*
v. *Gainer,* 69 W. Va. 699, 72 S. E. 790. Nor would such
attempt to pay or acknowledge make a new contract by impli-
cation. It amounts to nothing more than a performance of
the contract according to its terms. No new consideration
is perceived. A void and unenforceable contract in itself
is not a sufficient consideration for a new one. We do not
mean to intimate that the board and the Kundtz Company,
or other sellers of school furniture, cannot contract for such
supplies. It is the statutory duty of the board to build
schoolhouses and properly equip them. We do not mean to
say that all remedy of the Kundtz Company to obtain recom-
pense is closed if the board does not interpose defense.

The litigation now before us is based upon the claim that
the contract now in existence is void under the statute, and
its fruition should be prohibited as one made contrary to
the Constitution (article 10, § 8), the statute, and public
policy. The court, if it found the contracts void, as it
should have done, could not make a new contract for the
parties. The facts do not warrant the finding that there
was a new and independent contract made after the beginning
of the fiscal year 1921-22 at a time when it was lawful to
contract, and a promise to pay out of the funds available for
that year. The lower court based its decrees on its interpre-
tation of the statute, holding that the contracts as and when
made were legal and not void. The proposition of a new
contract or recovery on quantum meruit for goods received,
labor expended, and the like was not considered. Generally,
where a contract is void as against good morals, gambling
contracts, agreements to stiflle prosecution in criminal cases
and the like (malum in se), as well as contracts the making
of which is prohibited by statute, the courts will refuse to
afford relief to either party. They will be left where they

are found, without change in the status.  *Rock* v. *Mathews,*
35 W. Va. 531, 14 S. E. 137, 14 L. R. A. 508, where Judge
BRANNON quotes from 1st Pomeroy Eq. § 402, as follows:

> "Whenever a contract or other transaction is illegal
> and the parties thereto are in contemplation of law in
> pari delicto, it is a well-settled rule, subject to only a
> few special exceptions depending upon other considera-
> tions of policy, that a court of equity will not aid a par-
> ticeps criminis, either by enforcing the contract or
> obligation while yet it is executory, nor by relieving him
> against it by setting it aside, or by enabling him to
> recover the title to property which he has parted with
> by its means. The principle is thus applied in the
> same manner where the illegality is merely a malum pro-
> hibitum, being in contravention to some positive statute,
> and when it is malum in se, as being contrary to public
> policy or good morals."

The case of *Goshorn's Ex'r.* v. *County Court,* 42 W. Va.
735, 26 S. E. 452, is cited and relied upon, among others,
by counsel for Kundtz Company, as justification for recov-
ery on quantum meruit for the goods delivered to and used
by the board. In that case two of the members of the
county court purchased from Goshorn certain hogs for con-
sumption at the poor farm. The court was not in session
and no record made of the contract. The hogs were deliv-
ered and consumed. The court sitting as such when the
bill was presented refused to allow it in full, but entered
an order for payment of a less sum which it found would
be a just compensation for the hogs. Recovery was had for
the less sum, and Goshorn's administrator obtained a writ
of error. The judgment was affirmed. While there could
be no recovery on the contract because not made with the
county court as such, the court having received and con-
sumed the hogs, tendered Goshorn a sum equal to their
worth. The contract, if it had been regularly made by the
court, was one which it could have made. It was not a con-
tract prohibited by law and invalid and void because so pro-
hibited. The county court had the funds to pay legally
at its disposal for that purpose. The contract before us is
one which could not have been made at that time, either

by the members of the board in session or out of session. Its contraction was prohibited. It was malum prohibitum, wrong because prohibited; not inherently immoral, but so because its commission was expressly forbidden by positive law.

In *Bank ·v. County of Lewis,* 28 W. Va. 273, above cited, the contention was made that inasmuch as the county court had received and expended the borrowed money on its court house, rocovery should be had upon the common counts for moneys had and received, and for moneys laid out and expended for the use of defendant upon its implied · promise to repay. The court disposed of this contention by saying that the defendant had no authority of law to borrow money, in effect was prohibited by law from so doing, its action was ultra vires, and to permit a recovery would virtually make an unauthorized and prohibited contract legal in all cases where the borrowed money had been used for the legitimate purposes of the county. No implied, promise to repay could be based on an acknowledgment of the debt, or use of the ·money. And it was said that, ''if the lender in such cases is remediless, he cannot justly reproach the law for not providing him a remedy for his own folly and indiscretion.''

It is argued that this case is controlled by the decision in *Campe* v. *Board of Education,* 94 W. Va. 408, which holds that a teacher's contract made by a board before the end of the fiscal year for services to be performed in the following year is not void because when made there was uncertainty as to what amount of money the board will have at its disposal, unless the contract involves the expenditure of money in excess of what will be legally at its disposal in the year in which the service is to be performed. That case is applicable to teachers' contracts alone, under a statute expressly authorizing the board to make such contracts on or before the first Monday in July of each year. Judge Meredith was careful to say that if the statute violated the spirit of section 12, c. 28A, Code 1923, condemning contracts in anticipation of future levies, the Legislature had a right to amend the law or to pass subsequent laws inconsistent with it, and that, in so far as the teachers' contract

statute was inconsistent with section 12, c. 28A, Code, the former must prevail. That decision has no influence over the kind of contracts before us on this appeal.

The case before us is a hard one; but we cannot control the policy of the government, nor change the plain provisions of a statute by strained construction. The law must be administered as it is written. The contracts under consideration were illegal and void, made expressly so by the statute, and cannot be enforced. The Legislature has deemed it wise to so declare in order that levies may not be anticipated; floating indebtedness passed on to future years bringing about former chaotic conditions in fiscal affairs, and to insure that the fiscal bodies named in the statute shall have at their disposal funds to meet their contracts and obligations in the fiscal year when the obligations were incurred, or the contracts made. Necessity and inconvenience will not justify the bending or breaking of this law. This litigation is to declare these contracts so made and as they now exist illegal and void, and to prevent their consummation. It may be conceded that appellee should be paid for the value of services performed, and goods delivered and used; but it cannot be done in this proceeding.

It follows that the two decrees appealed from must be reversed, and the temporary injunction perpetuated; and it will be so ordered.

*Reversed; injunction perpetuated.*

LITZ, JUDGE, dissenting:

I do not agree with the Court in respect to the $8761.50 claim of Kundtz Company against the school board for the value of school desks or seats delivered by the former to the latter. The opinion holds that a contract by the board of education involving the expenditure of money not available for the current school year is void; and that such control will not become enforcible by subsequent ratification. Grant both propositions. If we say there was no valid contract between the board of education and Kundtz Company then the furniture belonged to the latter at the time of its appropriation and use by the school board after the beginning of the school

year of 1921-1922. The board at that time having authority to acquire equipment, became liable to Kundtz Company on an implied contract for the value thereof. What difference did it make whether the board accepted and appropriated this furniture or bought similar furniture from some one else? It had the right at the time to do either.

A situation identical with that in the hog case (referred to in the opinion) is presented here. In that case the county court was held liable on an implied contract for the value of the hogs delivered under an agreement with its individual members, upon the ground that the county had received the benefit of the property, which at the time of its use and appropriation the county court had authority to purchase. Delivery of the hogs under an invalid contract with the individual members of the county court in these circumstances was considered unimportant.

The case of *Bank* v. *County Court*, 28 W. Va. 273, relied on in the opinion, differs from the case here in that the county court there attempted to ratify an illegal, ultra vires act, prohibited by law, which it at no time had authority to do.

The claims of Keeney and Vickers for building and repairing school houses prior to the school year beginning July 1, 1921, of course stand on a different plane. These improvements when made became a part of the real estate belonging to the school district.