# CHARLESTON.

JOHN L. SWIGER *et als. v.* BOARD OF EDUCATION OF SARDIS DISTRICT *et al.*

(No. 6375)

Submitted March 12, 1929.    Decided March 26, 1929.

*Deem & Moist,* for appellants.

*J. E. Law,* for appellees.

LIVELY, JUDGE:

The decree appealed from refused to perpetuate a temporary injunction and dismissed the bill.

The plaintiffs are about 80 of the citizens and taxpayers of Sardis district and the prayer of their bill is to perpet-

ually enjoin the board of education of that district and A. L. Shrum Company, a corporation, from performing two contracts entered into between defendants (the board and Shrum Company) on the 2nd day of November, 1927, for the partial enclosing and erecting of a rough or outside structure of an addition to a brick school building at Wallace in said district; and the partial enclosing and erection of the rough or outside structure of a high and grade school building at the town of Sardis. The board had advertised for competitive bids for entirely enclosing a two-story high and grade school building of brick and tile construction at Sardis, containing basement, heating room, eight class rooms and corridor; and for entirely enclosing a two-story addition of brick and tile construction, containing four class rooms, to the school building at Wallace. The bids were opened on October 22, 1927, and defendant, A. L. Shrum Company, was the lowest bidder on the Wallace school addition of four rooms, at $8500; and on the eight-room building at Sardis for the sum of $20,807.61. The plans and specifications had been prepared by E. J. Wood & Son, architects, for which they charged (it is claimed) a fee of $1800. Shrum Company's bid for the work, plus the architect's fee amounted to $31,107.61. The funds legally then at the disposal of the board did not exceed $29,889.09. The contract actually entered into and signed by the board and contractors for the Sardis project, was for the sum of $19,407.61; and for the Wallace project, $7,900, which reduced the amount of the bids to $27,307.61, because by mutual agreement the items for steel window frames aggregating $2000 were eliminated. One of the points relied upon for reversal of the decree is that this aggregate item of $2000 for steel window frames, while eliminated from the bids and not therefore contained in the written contracts, is an obligation then assumed by the board which by a "gentleman's agreement" the board was to pay out of the next year's levy.

It appears that in 1912 the question of establishing a high school near the village of Wallace was submitted to a vote of the people and was decided by them in the negative; later, in 1921, a similar proposition again failed by a vote of the people, and in 1922 a proposed bond issue for the erection of

a grade and high school building in the district was likewise defeated. Subsequently a brick building for a graded school was erected at Wallace by the board out of funds derived from regular and special levies under chapter 18, Acts 1921, and since 1926 high school courses have been taught therein as well as graded school classes. At Sardis a third-class high school was established in 1915 under chapter 27, Acts 1908, and it is charged that the board could not legally establish that high school because at that time, and ever since that time, only three schools in three rooms were and have been conducted, whereas, the statute of 1908 under which the board acted required, as a condition precedent to the establishment of a high school, that there should be four schools taught in the building. Inasmuch as the high school at Sardis has ever since its irregular establishment been so conducted, supported by levies, classified and approved by the State School Department, we do not consider this point of error as of sufficient force to reverse the decree.

It further appears that the board in 1926 advertised for bids for the construction of a frame high school building at Wallace, and the construction of two additional class rooms, a gymnasium, corridors, etc., to the unfinished building at Sardis, whereupon the taxpayers headed by J. E. Evans enjoined that attempted program alleging and charging, among other things, that there were only 51 high school pupils at Sardis with four teachers, and 52 grade pupils with two teachers, and that the buildings at Sardis were more than ample; and that the construction of the proposed buildings would be unnecessary, and a wanton and wilful waste of public moneys. The answer of the board to that suit practically admitted the impracticability of the program then proposed. Pending this injunction two members of the board met September 24, 1927, and passed a resolution reciting that a proposal had been made to compromise and settle the injunction suit on the condition that the board change its original plan and construct in lieu thereof improvements only to the building at Wallace, and proceed with its plans at Sardis; and that the board had accepted the proposed compromise; and therefore the board would proceed to erect the

four-room addition at Wallace as far as its funds would go, and the two-story high and grade school building at Sardis. This change in plans to avoid the Evans suit being set in motion, resulted in the contracts entered into on November 2, 1927, and promptly brought about this suit at the instance of about 80 other taxpayers. There seems to have been no order compromising and dismissing the Evans injunction suit.

The plaintiffs now charge, as was charged in the Evans suit, that the proposed projects for which the contracts have been made, are a useless, unwise and wanton expenditure of the tax money of the district. The board in its answer says that because the people of the district had refused to authorize money to build a high school building, the duty was imposed upon it to provide necessary school buildings and that it is attempting to discharge this duty by the construction of a graded and high school building at each of said towns, and that it is imperative that this be done. Nuzum, a member of the board who was not in accord with the other member and president, and voted against the construction, says, in substance, that the buildings as planned and contracted for are not necessary and are unwise and are not fair to the other district schools. By cross-examination it was attempted to show by him that the board contemplated discontinuing some of the rural schools and consolidating them with the Wallace and Sardis schools, using busses to transport the pupils to and from the schools. He denied that any such program had ever been discussed by the board as such, and averred the present financial inability of the board to both carry out the building contracts and provide transportation facilities necessary, if rural schools be discontinued and consolidated with the Wallace and Sardis schools. The other members of the board do not testify; and while the allegation in the bill of unwarranted, wasteful and wanton expenditure of public moneys, is not fully shown, the want of necessity for the buildings as contracted is shown. Three successive proposals for bond issues to furnish money for high schools were defeated by popular vote, and the board is now seeking to accomplish by use of the annual authorized levies an objective condemned by popular vote, and has been

met by two injunction suits. When a board acts within its legal powers, its judgment and discretion fairly exercised will not generally be reviewed by the courts at the complaint of taxpayers whose judgment may have been otherwise. But where the action of the board amounts to an abuse of discretion the taxpayers affected will be awarded relief by the courts. Whether the proposed buildings will be beneficial or detrimental we cannot inquire, if the action of the board be within its statutory powers. *Spedden* v. *Board,* 74 W. Va. 181. But if the building program be *unnecessary,* it trenches very closely on an abuse of discretion, under all the circumstances here shown. We are not inclined to hold that the abuse of discretion is clear and convincing, but it has some influence on the conclusion we have arrived at on the right of the board to indirectly bind the future levies to complete its program.

The controlling issue is whether the letter or spirit of section 12, chapter 28a, Code, has been violated by these contracts. That section prohibits a board from making any contract, *express or implied, the performance of which in whole or in part would involve* moneys in excess of funds legally at the disposal of the board, and makes any indebtedness or contract so made void and of no effect. On the face of these contracts, that is from their provisions, no obligation is expressed which would bind the board to pay Shrum Company any money in excess of the $29,889.09 then at the disposal of the board. It is contended by plaintiffs that the architect's fee arising out of and a part of the contract, though not expressed therein, together with the $2000 eliminated from the original bid, would make the contracts in excess of the funds in hand, and it is testified to by witnesses for plaintiffs that the $2000 for steel window sashes, eliminated from the bid, was done so by a "gentleman's agreement", with the understanding that the sashes should be put in by the contractor after the first of the next fiscal year at the same price, namely, $2000, and charged against the next year's levy. The next day after the contracts were signed, Shrum Company addressed letters to the board to the effect that it had eliminated the items of sashes from the

bids to the amount of $2000, as they were not necessary in the construction work until a later date, and thereby agreed to put in the sashes on or before July 2nd or 3rd at the prices set out in the bids. The trial chancellor considered and held that this letter only contained a proposition to do future work at a price named to which there was no response, and was no part of the written contracts, and that the board was not obligated for the sashes by the "gentleman's agreement". The proposition to put in the sashes at the original bids just after the beginning of the next fiscal year is rather closely connected with the contracts and was engendered therefrom. However, we see no legal obligation on the board compelling it to permit the installation of the sashes by Shrum Company at the prices named. If it had the "gentleman's agreement" as charged, that agreement would not bind it. The architect and Shrum both deny any such "gentleman's agreement" and we are not disposed to disturb the court's finding on this dispute of fact. This feature of the controversy may be dismissed with the observation that the items for sash were advisedly omitted by both the contractor and board because their inclusion would make the written contract illegal as in excess of funds; both realizing that at some future day the sash would necessarily be put in the building, and the additional expenditure of money would necessarily follow as a result of the construction of the foundations, walls and roofs, if the buildings were ever made fit for school purposes.

And this brings us to the controlling question whether the building of grade and high school buildings may be done by piecemeal, and running over a period of years. May a board of education contract for the foundation, walls and covering within the amount of money then at its disposal, and in future years complete the building for occupancy and use out of the levies for those future years, and not violate the spirit of the statute above cited?

It is quite evident that a contract for a part of a building, contemplates a future contract for its completion, and hence involves the levies for future years if the building be completed. It commits the board to future expenditures out of

future levies, or abandonment of the partial construction which would waste public funds. It is true that the board is authorized and directed to build schoolhouses, and it is its duty to do so; but it is expressly prohibited from making any contract which would *involve* the expenditure of money in excess of its funds then available. It is confidently asserted that *Davis* v. *Board,* 38 W. Va. 382, recognizes and approves the power and authority of a board to build by piecemeal, and the learned trial chancellor cited and relied on that decision in a strong written opinion found in the record, as controlling the case. That decision was based on chapter 45, section 45, Code, as found in the Code of 1891, which was the statute in 1893, when the decision was rendered. That statute made it unlawful for a board to *contract for or expend* more than the aggregate amount at its disposal in any year. In 1908 the legislature re-enacted the school law (chapter 27, Acts 1908) and further restricted the power of the board in making contracts, making it unlawful to incur any obligation not expressly authorized by law, and from making any contract express or implied, the performance of which in whole or in part, would involve expenditure of moneys not then at its disposal. Later, in 1915, (chapter 85, Acts 1915) this same restriction was extended to include county courts, municipal bodies, or other bodies charged with the administration of fiscal affairs of a county, school district or municipality. Notwithstanding the act of 1908, many school districts had unpaid orders issued in former years, which were burdensome and in good conscience should be paid. The same conditions existed with county courts and municipalities, and the act of 1915 provided for "a special debt levy" not to exceed twenty cents on the one hundred dollars valuation to pay off these outstanding obligations. These fiscal bodies were provided a means of "cleaning the slate", with the legislative injunction and policy then made plain that they should avoid *involving* the future levies by any contract express or implied, and "sin no more". Heavy penalties were prescribed for involving the future levies. Later, in 1919, (chapter 126, section 12), this law was further strengthened by providing that any indebtedness created,

contract made or draft issued in violation thereof should be void, and if any money was paid thereon, it could be recovered from the person receiving it. This act of 1919 was passed to meet the defect in that regard in the former law pointed out in *State* v. *Davis,* 74 W. Va. 261, holding that outstanding orders issued in former years in the hands of a taxpayer should be received by the sheriff in payment of taxes levied in a subsequent year. The evolution of the present statute from the law of 1893, which simply provided that a board should not contract for or expend money in excess of funds then available, and under which *Davis* v. *Board, supra,* was decided, is reviewed for the purpose of showing the clear legislative policy, namely, that a fiscal body shall make no contract express or implied which would involve the expenditure of future levies. This policy is recognized and emphasized in *Shonk Land Company* v. *Joachim,* 96 W. Va. 708; and *Huddleston* v. *County Court,* 98 W. Va. 706. · The contracts here under consideration do not on their faces compel future expenditures to carry them out. No obligation to pay Shrum Company beyond the sums set out in the contracts appear. But the contracts themselves impel the conclusion that future levies are indirectly involved in order to make the buildings of any value to the district. If they do not, the contracts are valueless to the district, and should be prohibited as a wanton waste. We think the contracts violate the spirit of the act and the board should be inhibited from carrying them out. The board is attempting to carry out a program involving future levies, which program the taxpayers have disapproved three times by popular vote, and are now vigorously protesting against. These contracts are not of the class of contracts made for running expense as illustrated in *Water Company* v. *Town of Welch,* 64 W. Va. 373, and *Allison* v. *City of Chester,* 69 W. Va. 533; but fall within the class prohibited in *Spilman* v. *City of Parkersburg,* 35 W. Va. 605, in which case the city under the guise of a lease attempted to install water works and pay for it over a period of years by legal tax levies. There are other points of error urged against the decree which are unnecessary to be considered.

The decree will be reversed, the bill reinstated and the injunction perpetuated.

> *Reversed; bill reinstated; injunction perpetuated.*