# CHARLESTON.

Marshall W. McCoy *et al. v* Town of Riverside *et al.*

(No. 6774)

Submitted October 1, 1930.   Decided November 18, 1930.

(Rehearing Denied January 19, 1931.)

*Minter L. Wilson* and *Frank Cox*, for appellant.

*M. M. Neely, Van A. Barrickman* and *Charles McClane* for appellees.

*Steptoe & Johnson, Frank H. Mason* and *Norman S. Elliott*, Amicus Curiae.

Litz, Judge:

The plaintiff, Marshall W. McCoy, sues for specific performance of a contract between himself and the town of Riverside, a municipal corporation, dated January 28, 1927, whereby it assigned to him a lease covering a small plot of ground on which it had recently drilled a water well 720 feet deep, in consideration of the costs of the well amounting to $3,589.65; the town agreeing further to construct a complete system for distribution to consumers therein of water from said well, and to purchase from McCoy and his assigns ''all water (supplied from said well) it can legitimately use'' for a period of 49 years beginning not later than July 1, 1927, at 25c a thousand gallons.

Plaintiff was a member of the municipal council at the time of the execution of the contract, an hour before a new council came into being. After drilling the well 65 feet deeper, on June 27, 1927, he called upon the new council to construct the water system and accept and pay for water in accordance with the terms of the contract. The council refused to attempt the construction of the water system, because the town did not have any funds for the project, but offered to purchase water from McCoy if he would construct the distributing system. He rejoined by demanding that the council borrow the necessary money. This suit was instituted January 30, 1929.

Complaining of the decree of the circuit court, which requires it to promptly perform, the town contends (1) that the contract is not such as a court of equity will specifically enforce; (2) that it violates section 59, chapter 47 of the Code, which makes it unlawful for any council or board of commissioners of any town or city, or any member thereof, or other officer or officers thereof, to be interested personally, either directly or indirectly, or as a manager, officer or stockholder of any partnership, business, firm or corporation, in any contract, furnishing material, and supplies to any town or city, or to any contractor, or workmen for any town or city, or in any manner whatsoever, whereby the tax payers of any such town or city shall become the paymaster, either directly or indirectly; and (3) that it also is violative of section 12, chapter 28A of the Code, providing: "It shall be unlawful for any county court, board of education, or council of a municipal corporation, or other body charged with the administration of the fiscal affairs of any county, school district or independent school district, or municipality to expend any money or to incur any obligation or indebtedness which such fiscal body is not expressly authorized by law to expend or incur. Nor shall any such fiscal body make any contract, express or implied the performance of which, in whole or in part, would involve the expenditure of money in excess of funds legally at the disposal of such fiscal body, nor issue or authorize to be issued any certificate, order or other evidence of indebtedness which cannot be paid out of the levy for the current fiscal year or out of the fund against which it is issued."

There is much proof relating to the estimated cost of constructing a water system in the town of Riverside and of the funds at its disposal for such an undertaking at the date of the contract. The money received from McCoy was used by the town to meet its current obligations, including debts incurred by it in drilling the well. If this money had been used toward the construction of the water system (as McCoy claims the council verbally agreed to do), there would have been no other funds available to complete the work. Thomas R. Marshall, the only witness introduced by the plaintiff to prove the cost of a complete water system, fixes the amount at $14,363.50, without taking into consideration the additional expense of elevating the reservoir or of using an automatic pump in order to provide all of the houses in the town with fire protection in accordance with the requirements of the Ohio and West Virginia public fire protection and standards. Numerous witnesses for defendants say the cost would be much greater. It is therefore readily observable that the town did not have at its disposal on the date of the contract sufficient funds to construct the water system. McCoy testified that the town assigned him its interest in the well because (as other members of the council represented) it did not have funds to drill deeper for an adequate water supply. Wyatt F. Roush, who was also a member of the council at the date of the contract, testified, as a witness for the plaintiff, that the town sold its interest in the well to McCoy because it was unable, for want of funds, to proceed further with the project. Counsel for plaintiff, nevertheless, contend, under the authority of *Water Co.* v. *The Town of Welch*, 64 W. Va. 373, *Allison* v. *City of Chester*, 69 W. Va. 533, and *Walla Walla City* v. *Walla Walla Water Co.*, 172 U. S. 1, that the contract was legal and capable of enforcement notwithstanding section 12, chapter 28A of the Code. Each of those cases involved an agreement of a municipality to purchase its water, gas or light supply for a period of years, and decided that the validity of such contract is tested by the cost of the service thereunder for one year. It is not contended that the town of Riverside cannot legally bind itself by one contract to purchase its water supply for a period of 49 years. The real question is whether it has au-

thority, under section 12, chapter 28A, Code, as construed and applied in *Shonk Land Co.* v. *Joachim,* 96 W. Va. 708; *Swiger* v. *Board of Education,* 107 W. Va. 173, and other cases, to contract an indebtedness in the construction of a water system exceeding the funds at its disposal for the current fiscal year. This question must be answered in the negative. Holding that a board of education cannot lawfully make contracts for building and repairing school houses, and for furnishing the same, at a time when such contracts would involve the expenditure of money in excess of the funds legally at its disposal, in *Shonk Land Co.* v. *Joachim,* at page 721, the Court stated. ''The contracts under consideration were illegal and void, made expressly so by the statute, and cannot be enforced. The Legislature has deemed it wise to so declare in order that levies may not be anticipated; floating indebtedness passed on to future years bringing about former chaotic conditions in fiscal affairs, and to insure that the fiscal bodies named in the statute shall have at their disposal funds to meet their contracts and obligations in the fiscal year when the obligations were incurred, or the contracts made. Necessity and inconvenience will not justify the bending or breaking of this law.'' In *Swiger* v. *Board of Education,* it was held that a contract for the construction of a school building involving the expenditure of a relatively small amount in excess of the funds available for the current fiscal year violated the spirit and intention of the statute. While considering in that case the question of whether or not a fiscal body may evade the statute by piecemeal construction, JUDGE LIVELY, speaking for the Court, said:

> ''And this brings us to the controlling question whether the building of grade and high school buildings may be done by piecemeal, and running over a period of years. May a board of education contract for the foundation, walls and covering within the amount of money then at its disposal, and in future years complete the building for occupancy and use out of the levies for those future years, and not violate the spirit of the statute above cited?

It is quite evident that a contract for a part of a building, contemplates a future contract for its completion, and hence involves the levies for future years if the building be completed. It commits the board to future expenditures out of future levies, or abandonment of the partial construction which would waste public funds. It is true that the board is authorized and directed to build schoolhouses, and it is its duty to do so; but it is expressly prohibited from making any contract which would *involve* the expenditure of money in excess of its funds then available. It is confidently asserted that *Davis* v. *Board*, 38 W. Va. 382, recognizes and approves the power and authority of a board to build by piecemeal, and the learned trial chancellor cited and relied on that decision in a strong written opinion found in the record, as controlling the case. That decision was based on chapter 45, section 45, Code, as found in the Code of 1891, which was the statute in 1893, when the decision was rendered. That statute made it unlawful for a board to *contract for or expend* more than the aggregate amount at its disposal in any year. In 1908 the legislature re-enacted the school law (chapter 27, Acts 1908) and further restricted the power of the board in making contracts, making it unlawful to incur any obligation not expressly authorized by law, and from making any contract express or implied, the performance of which in whole or in part, would involve expenditure of moneys not then at its disposal. Later in 1915 (chapter 85, Acts 1915) this same restriction was extended to include county courts, municipal bodies, or other bodies charged with the administration of fiscal affairs of a county, school district or municipality. Notwithstanding the act of 1908, many school districts had unpaid orders issued in former years, which were burdensome and in good conscience should be paid. The same conditions existed with county courts and municipalities, and the act of 1915 provided for 'a special debt levy' not to exceed twenty cents on the one hundred dollars valuation to pay off these outstanding obligations. These fiscal bodies were provided a means of 'cleaning the slate', with the legis-

lative injunction and policy then made plain that they should avoid *involving* the future levies, by any contract express or implied, and 'sin no more'. Heavy penalties were prescribed for involving the future levies. Later, in 1919, (chapter 126, section 12), this law was further strengthened by providing that any indebtedness created, contract made or draft issued in violation thereof should be void, and if any money was paid thereon, it could be recovered· from the person receiving it. This act of 1919 was passed to meet the defect in that regard in the former law pointed out in *State* v. *Davis*, 74 W. Va. 261, holding that outstanding orders issued in former years in the hands of a taxpayer should be received by the sheriff in payment of taxes levied in a subsequent year. The evolution of the present statute from the law of 1893, which simply provided that a board should not contract for or expend money in excess of funds then available, and under which *Davis* v. *Board, supra,* was decided, is reviewed for the purpose of showing the clear legislative policy, namely, that a fiscal body shall make no contract express or implied which would involve the expenditure of future levies. This policy is recognized and emphasized in *Shonk Land Company* v. *Joachim*, 96 W. Va. 708; and *Huddleston* v. *County Court*, 98 W. Va. 706.''

Further discussion of a plain statute which has been so literally and vigorously construed and applied is uncalled for in this opinion.

The decree of the circuit court is therefore reversed, and the bill of complainant dismissed.

*Reversed; bill dismissed.*