HUNTINGTON WATER CORPORATION *v.* THE CITY OF
HUNTINGTON

(No. 8033)

*and*

HUNTINGTON WATER CORPORATION *v.* THE CITY OF
HUNTINGTON

(No. 8080)

Submitted November 1, 1934.   Decided November 20,
1934.

532

Fitzpatrick, Brown & Davis and Clarence H. Dickey, for Huntington Water Corporation.

Okey P. Keadle, for City of Huntington.

HATCHER, JUDGE:

Huntington Water Corporation, a public utility, seeks to recover of the City of Huntington certain delinquent rentals for municipal water service. The case was submitted to the court in lieu of a jury and a judgment rendered in favor of the plaintiff for $125,954.07. A writ of error was granted the city.

By mesne assignments the plaintiff is the owner of three water works franchises. One was issued by the city in 1886, one by the Town of Guyandotte in 1888, and the other by the Town of Central City in 1888. The three franchises are couched in similar terms, and both towns are now included within the defendant's present incorporation. So the three franchises may be treated as one. In granting the 1886 franchise, the defendant ordained that the grantee should establish eighty-four fire hydrants primarily and such additional fire hydrants later as the city should require. The city was to pay $3,000.00 annually for the eighty-four hydrants, and $40.00 annually for each additional hydrant. In consideration of the franchise, the grantee was to supply water free of charge to certain city buildings. The franchise was to exist for an initial period of thirty years. But the franchise gave the city certain optional rights to purchase the water system, and provided that if those rights were not exercised within

thirty years, the franchise should be extended automatically for a further period of thirty years. The option was not exercised and the franchise is still operative.

In 1921, the public service commission ordered the plaintiff to discontinue free water service to the city buildings, and prescribed a charge therefor. Since then, the defendant has paid for such service the sum of $20,-644.54, which it would have applied herein as an offset. The growth of the defendant since 1886 has required the installation of many additional fire hydrants, there being now a total of 845 fire hydrants in use. Under the franchise rates, the hydrants would now be costing defendant about $38,000.00 annually. Instead, in 1923, the commission changed somewhat the franchise "set up" of the city rates (allowed an additional charge per lineal foot for pipe lines thereafter installed) whereby the water service is now costing the city about $78,462.48 annually. The city met all water service charges against it until May 1, 1932. For the fiscal year of 1932-3, the city failed to pay a balance of $46,862.48 on water service charges. On September 30, 1933, the city notified the plaintiff that it was without funds to meet the demands of its several utilities, and could not legally incur any indebtedness for utility service. By reason of the constitutional amendment limiting levies, effective January 1, 1933, the city could not levy sufficient taxes within the limitation to meet its current expenditures. So no payments were made on water service charges for 1933-4, except a few small ones.

Counsel for the defendant presents the following points in his brief:

"1. That plaintiff cannot recover herein because of the provisions of Chapter 11, Article 8, Sections 12 and 13 of the Code of West Virginia;

"2. That as to the increase in rates granted plaintiff by the Public Service Commission, defendant was prevented by the Tax Limitation Amendment from laying levies with which to

pay said rates after first paying for essential governmental services;

"3. That the provisions of section 10 of the franchise relating to free water were in lieu of a franchise tax which the city would have had the right to impose on plaintiff at the time of the execution of the franchise, and that therefore defendant is entitled to the offset claimed."

All of the above points as applied by counsel relate to one matter, i. e., the changes in rates made by the public service commission. For which reason, doubtless, the argument of counsel does not follow closely his points as numbered. But for convenience, we will adopt his enumeration in considering his positions.

*First.* Code 1931, 11-8-12, requires funds derived from taxation to be expended only for the purposes for which levied. Section 13, following, makes unlawful the contract of any fiscal body which involves the levies of future years. Counsel for the city takes the sole position under his first point that the parties to the franchise in 1886 contemplated that the growth of the city would require additions to the water system and correspondingly greater payments for water service; but that the parties could not have contemplated that the rates then agreed upon by them would later be more than doubled by a commission not even in existence at that time; and that a fair test of the validity of the contract would be the city's ability in 1886 to have paid for the service then at the present rates. Those rates were imposed in 1923 and were justified by conditions as of that date. The taxable value of property within the city had then increased greatly since 1886. The city's ability to pay for water service in 1923 had increased in proportion to the increase in valuation. The test proposed by counsel fails because it would be manifestly unfair to measure the city's ability to pay the 1923 rates by the low taxable valuation of 1886. Moreover, this court is committed to the rule that the validity of a municipal contract to purchase water for a period of years is ordinarily tested by the cost of the service for the first year. *Allison* v. *Ches-*

*ter,* 69 W. Va. 533, 72 S. E. 472. That decision dealt with the restrictions on municipal expenditures imposed by the constitution, Article X, section 8; but the test prescribed applies to statutory as well as to constitutional restrictions. That test is supported by the weight of authority (44 C. J., subject Municipal Corporations, sec. 4063), and has been recognized in such later decisions of this court as *Charleston* v. *Littlepage,* 73 W. Va. 156, 160, 80 S. E. 131; *Swiger* v. *Board,* 107 W. Va. 173, 180, 147 S. E. 708; and *McCoy* v. *Riverside,* 109 W. Va. 670, 672, 158 S. E. 539. (Counsel does not contend that the franchise contract was invalid under the test established in *Allison* v. *Chester.*)

*Second.* Counsel points out that the city received no additional service as compensation for the increase in rates granted the plaintiff by the commission, and that the city never assented thereto, the increase being imposed by the fiat of the commission. He refers to *Benwood* v. *Commission,* 75 W. Va. 127, 83 S. E. 295, holding that rate making is a legislative act and reasons that the increase in rates is therefore legislative and not contractual. He then contends that the constitutional clauses protecting contracts apply to strictly contractual obligations and not to legislative impositions thereon.

There is division of authority on counsel's contention. A review of the decisions would serve no useful purpose now, as this court has settled the controversy against him, in this jurisdiction, in *Benwood* v. *Commission,* *supra.* That case held categorically that such a franchise contract as the one between the instant parties was made subject to the inherent power of the legislature to supervise and regulate; that when the legislature (later) delegated that power to the public service commission, then the contract became equally subject to the orders of the commission; and that a change of the contract rates by the commission did *not impair the obligation of the contract.* Accord: *Coal & Coke Co.* v. *Commission,* 84 W. Va. 662, 100 S. E. 557; *Commission* v. *Harpers Ferry Co.,* 114 W. Va. 291, 171 S. E. 760; *Legal Tender Cases,* 12 Wall. 457, 550-1, 20 L. Ed. 287. It is a fundamental rule

of the common law that all general legal principles affecting contracts enter by implication into and form a part of every contract as fully as if specifically expressed therein. *State* v. *Ins. Co.*, 114 W. Va. 109, 170 S. E. 909. "The law must be read into and with the contract. The law is first, contracts second." *Carleton Co.* v. *Ry. Co.*, 106 W. Va. 126, 133, 145 S. E. 42. The *Benwood* case is based on that rule and is essentially sound. If the contract is not impaired by the changes, it necessarily follows that the changes themselves are impressed with contractual quality.

Counsel contends further that if the legislature has authority to regulate such rates, the sovereign people of the state have paramount authority to do so and that the effect of the recent constitutional limitation on levies is to reduce or eliminate the rates entirely. This contention is not well taken, because the amendment does not impair obligations legally contracted. *Bee* v. *Huntington*, 114 W. Va. 40, 171 S. E. 539.

*Third.* It is useless to recount the position of counsel under this point. No matter how forceful his argument might be as an original proposition, the matter is foreclosed. The order of the commission requiring the city to pay for water used in the municipal buildings was affirmed by this court on appeal. See *Huntington* v. *Commission*, 89 W. Va. 703, 110 S. E. 192. That affirmance was specifically declared to be *res judicata* upon the subsequent appeal of the same case in 91 W. Va. 346. Any relief from that order must be sought from the commission itself.

The city did not better its position herein one whit, by notifying the plaintiff it was unable to pay for municipal water service. It continued to accept the service. For that service, it must now pay. *Water Co.* v. *Boise City*, 230 U. S. 84, 57 L. Ed. 1400.

We are therefore of opinion to affirm the circuit court.

Plaintiff has filed in this court a petition praying that the defendant be required to include in its current levy an assessment—in excess of the constitutional limitation if necessary—which will produce sufficient funds to pay

plaintiff's demand.·· Such an excess is.permissible under *Bee* v. *Huntington, supra.* ·

The writ will accordingly issue..

*Affirmed; mandamus issued.*