STATE *ex rel.* POINT TOWING COMPANY, *a Corporation*

*v.*

ROBERT P. MCDONOUGH, DIRECTOR *of the* WEST VIRGINIA
DEPARTMENT OF NATURAL RESOURCES,
TRUMAN E. GORE, *etc., et al.*

(No. 12576)

Submitted June 21, 1966.              Decided July 12, 1966.

*Donald C. Carman, Henry C. Bias, Jr.,* for relator.

*C. Donald Robertson,* Attorney General, *Thomas P. O'Brien, Jr.,* Assistant Attorney General for respondent.

CAPLAN, PRESIDENT:

In this original proceeding in mandamus the petitioner, Point Towing Company, a corporation, seeks a writ to compel the respondents, Robert P. McDonough, Director of the Department of Natural Resources for the State of West Virginia, Truman E. Gore, Commissioner of the Department of Finance and Administration, and William L. Coffman, Director of the Budget Division of the Department of Finance and Administration, to prepare, issue, process and submit a proper requisition to the Auditor of the State of West Virginia whereby the petitioner may be paid the sum of $20,500.00 which the said petitioner alleges is due and owing to it. In the alternative the petitioner prays that a writ be awarded commanding the respondents to institute an action in eminent domain wherein the value of the towboat taken by the State can be properly determined and payment therefor made to the petitioner.

A rule was granted on June 6, 1966, returnable on June 14, 1966, at which time, upon the motion of the petitioner, the hearing thereon was continued until June 21, 1966. On the latter date the case was submitted for decision upon the petition; the answer and demurrer of the respondents; the petitioner's replication to said answer; upon the exhibits of each of the parties; and upon the briefs and oral arguments of counsel.

The petitioner, a Pennsylvania corporation, is engaged in the business of river transportation and in the operation thereof maintains offices in Kanauga, Ohio. Sometime during the month of February or March of 1965 representatives of the State of West Virginia approached the petitioner at its Kanauga offices and inquired about the possibility of purchasing a towboat. Upon being informed that two such boats were available for sale, a report thereof was made to the West Virginia Board of Public Works. Thereafter, at

the request of that Board and the Governor of the State of West Virginia, the Honorable Gus R. Douglass, Commissioner of Agriculture and member of the Board, made an inspection of the two boats and by letter of March 9, 1965 recommended that, if one is to be purchased, the State purchase the one named and designated the "Thelma-Ann".

By an agreement dated May 31, 1965, designated BARGE CHARTER PARTY, the petitioner agreed to "let" and the charterer, State of West Virginia, Department of Natural Resources, agreed to "hire" the "M/V Thelma-Ann" for a period of one month at a rental rate of $500.00 per month. On the face of this agreement was the notation, "SEE ATTACHMENT ONE". Attached thereto and contained in the record of this proceeding as Petitioner's Exhibit No. 2 is the following:

"ATTACHMENT ONE TO BE ATTACHED TO AND MADE PART OF BARGE CHARTER PARTY DATED MAY 31, 1965 BETWEEN POINT TOWING COMPANY AND THE STATE OF WEST VIRGINIA, DEPARTMENT OF NATURAL RESOURCES.

"The State of West Virginia, Department of Natural Resources agrees to purchase the M/V Thelma-Ann on July 1, 1965 for the sum of TWENTY THOUSAND DOLLARS ($20,000.00) and further agrees to pay the above sum to Point Towing Company on or before July 15, 1965."

The above agreement was executed for Point Towing Company by Robert H. Bosworth, its president, and for the State of West Virginia by Warden M. Lane, who at that time was the Director of the Department of Natural Resources. Pursuant to this agreement, the petitioner, on or about May 31, 1965, delivered the Thelma-Ann to the State of West Virginia, Department of Natural Resources, and the latter accepted delivery thereof. Thereafter, the boat was used by the State to tow the showboat Rhododendron through the waters of various streams throughout this and other states. The name of this towbeat was subsequently changed to "Mary Alice".

During the month of January, 1966, while being operated to tow the Rhododendron, the motor vessel Mary Alice sank in the waters of the Monongahela River at or near a point known as Mile 91 of said river. So far as this record is concerned, the Mary Alice was never recovered from her watery resting place by the parties to this proceeding.

The petitioner here complains that although the Legislature, at its Regular Session, 1965, made an appropriation of funds from which payment for this boat can be made, the present Director of the Department of Natural Resources, Robert P. McDonough, who succeeded Warden M. Lane in that office, has, upon request by the petitioner, refused and continues to refuse to issue the proper requisition so as to effect the payment of this obligation. It is the position of the petitioner that the aforesaid agreement has been fully executed and that the relief sought here will merely compel the performance of a purely ministerial duty.

In support of its assertion that funds are available from which this obligation can be paid, the petitioner alleges, and it appears from its exhibits, that on March 15, 1965, the Board of Public Works amended the budget of the Department of Natural Resources for the fiscal year 1965-66 by adding $30,000.00 thereto. Furthermore, petitioner's Exhibit No. 3 shows that on June 17, 1965, the Board of Public Works approved an expenditure by the Department of Natural Resources in the sum of $30,000.00 for a boat. This approval, however, authorized such expenditure to be made from the budget for the fiscal year 1965,66 not from the one in effect on the date of the agreement or when such approval was given.

In these circumstances, the petitioner contends, a clear legal right to the relief sought and a corresponding duty on the part of the respondents to perform having been shown to exist, mandamus is the proper remedy and will lie as the only manner in which justice can be accomplished.

The respondents, on the other hand, take the position that the writ sought can not be awarded and assert as their principal reason therefor that the contract, upon which the

petitioner solely relies, is invalid. Although the respondents state several reasons in support of their contention that the contract is invalid, and all have been considered, we are of the opinion that only one has merit. Succinctly stated, the respondents assert that the contract dated May 31, 1965, whereby the petitioner agrees to sell and the State agrees to purchase the subject boat, is in direct violation of the provisions of Code, 1931, 12-3-17, and is therefore invalid. They say that this was an attempt to incur a liability in a fiscal year which would be paid in the next fiscal year.

Where pertinent, Code, 1931, 12-3-17, reads as follows:

> "It shall be unlawful for any state board, commission, officer or employee to incur any liability during any fiscal year which cannot be paid out of the then current appropriation for such year * * *. It shall be unlawful for any * * * officer * * * to pay any account or bill incurred during any fiscal year out of the appropriation for the following year * * *.

> "Any * * * officer or employee violating any provision of this section shall be personally liable for any debt unlawfully incurred or for any payment unlawfully made."

We are in agreement with the respondents' contention. The obvious purpose of the above statute is to prevent a spending unit of the state government from creating a liability which can not be paid from *then existing* funds. It expressly precludes the creation of an obligation during a fiscal year which is to be satisfied in the next fiscal year. This Court, in *Shonk Land Co. et al.* v. *Joachim, et al.,* 96 W. Va. 708, 123 S. E. 444, considering a like statute, said: "The legislative policy is clear, and the statute must not be warped by construction to defeat it. The phrases 'funds legally at the disposal of the fiscal body,' and 'which cannot be paid out of the levy for the current fiscal year,' refer to the time when the contract is made, and not in futuro. No contract is valid which will bind the levies of future years * * *."

While the facts in the *Shonk* case differ, in some respects, from those in the instant case, the legal principles expressed

therein clearly are applicable here. In the case under consideration there is a contract dated May 31, 1965, during the 1964-65 fiscal year, providing for a purchase on July 1, 1965 and payment therefor on July 15, 1965, the latter two dates being in the fiscal year of 1965-66. This purported to be an enforceable contract which would bind the state's funds in the next fiscal year; however, at the time the contract was executed there were no existing funds for that purpose.

The contention of the petitioner that this contract is not controlled by this statute because the legislature had already made an appropriation for the fiscal year 1965-66, out of which such liability could be paid, is without merit. It must be borne in mind that the legislature conceivably could meet in special session prior to the beginning of the fiscal year and amend its appropriations. Funds appropriated by the 1965 Legislature did not become existing funds, out of which purchases could be made, until July 1, 1965. Consequently, these funds could not be bound for payment until that date. The contract of May 31, 1965 was unquestionably an attempt to require the payment of funds during the next fiscal year, a procedure specifically prohibited by Code, 12-3-17.

While an officer of a state spending unit necessarily must consider the legislative appropriation in planning the operations of his department, he can not spend funds from that appropriation until they actually exist for expenditure. As stated, such funds do not exist and are not available for expenditure until the beginning of the fiscal year for which the appropriation was made; neither may he bind such funds for expenditure during the next fiscal year. If, by the mere expedient of making a contract to purchase effective in the next fiscal year, state funds could be bound prior to such year, the above quoted statute would be rendered meaningless. To hold otherwise would create a perilous precedent.

This Court looks with disfavor upon the situation created by, as expressed in the respondents' brief, "the actions or inaction of certain public officials". However, the petitioner

was under a legal obligation, in dealing with a governmental entity, to have determined whether such entity, limited as it was in its spending policy by the above quoted statute, could have lawfully entered into the proposed contract. This determination the petitioner failed to make. "One dealing with such fiscal body must know its powers and limitations. He is charged with the knowledge that his contract in violation of the statute is void, and that his order or draft in pursuance thereof is worthless, and cannot be enforced, and, if paid voluntarily, may be recovered from him. He contracts at his peril." *Shonk Land Co., et al.* v. *Joachim, et al.*, 96 W. Va. 708, 123 S. E. 444. In view of the principles expressed in this opinion, the words of Judge Lively in the *Shonk* case are appropriate here. There he said, "The case before us is a hard one; but we cannot control the policy of the government, nor change the plain provisions of a statute by strained construction. The law must be administered as it is written."

To declare this contract valid by permitting a strained construction, or a justification, to change the plain provisions of Code, 1931, 12-3-17, would be tantamount to opening the proverbial "Pandora's Box", and before it could again be secured the fiscal affairs of the State might well decline to a chaotic level, a situation which the above statute was designed to prevent.

Consequently, we are of the opinion that the contract of May 31, 1965 is invalid and that it would be unlawful for the respondents to sign the requisition for payment thereunder as requested. It has consistently been held by this Court that mandamus will not lie to compel the performance of an illegal or unlawful act. *State ex rel. Damron* v. *Ferrell*, 149 W. Va. 773, 143 S. E. 2d 469; *State ex rel. County Court of Cabell County* v. *Arthur*, 150 W. Va. 293, 145 S. E. 2d 34. Therefore, the petitioner having failed to show a clear legal right to the relief sought or that the respondents have a corresponding duty to perform the act demanded, the writ of mandamus praying that the respondents be compelled to issue the subject requisition must be denied. See *State ex rel. Zagula* v. *Grossi*, 149 W. Va. 11, 138 S. E. 2d 356.

The petitioner seeks alternate relief in mandamus by requesting that the respondents be directed to institute a proceeding in eminent domain in the Circuit Court of Kanawha County, West Virginia, and therein to legally acquire and pay for the towboat which is the subject of this proceeding. It is conceded by the petitioner that this requested relief is not applicable to respondents Gore and Coffman, but it asserts that, by reason of Code, 1931, 20-1-7 (12), as amended, respondent McDonough has the authority to acquire property by proceeding in eminent domain and that he should be compelled to do so in this case.

It is contended by the petitioner that, since the State took possession of property belonging to the petitioner and has failed to compensate the petitioner therefor, the State should be compelled to institute eminent domain proceedings wherein compensation may be paid. The petitioner further contends that personal property may be the subject of a proceeding in eminent domain. In relation to the latter contention, although the comments of the writers are brief, there are authorities which hold that the power of eminent domain extends to personal property. 26 Am. Jur. 2d, Eminent Domain, §80; 29A C.J.S., Eminent Domain, §§ 65 and 108; 1 Nichols on Eminent Domain, §2.1.

In a petition filed in a condemnation or eminent domain proceeding it must be alleged that the property sought to be taken is within the jurisdiction of the court. Code, 1931, 54-2-1, provides that such petition may be filed in the court of "the county in which the estate is situated". The petition in the instant case seeks to compel respondent McDonough to institute such proceeding in the Circuit Court of Kanawha County. Nothing in the record of this case or in the allegations of the parties in any manner tends to show that the subject towboat is or ever was situate in Kanawha County, West Virginia. Furthermore, when the petitioner did own such boat it had possession thereof at its place of business in Kanauga, Ohio. We are not called upon here to determine where such proceeding could be instituted, but, in the circumstances of this case, the Circuit Court of Kanawha County would not have jurisdiction. As stated

in 18 Am. Jur., Eminent Domain, §313, "The jurisdiction of courts over eminent domain proceedings is wholly statutory, and no court has jurisdiction in such matters except in so far as it is given jurisdiction by the provisions of the statute."

A petition in a condemnation proceeding must also allege that the one against whom the action is instituted is then the owner of or has a certain legal interest in the property sought to be taken. Code, 1931, 54-2-2, as amended. In the instant case it is uncontradicted that the Thelma-Ann is no longer the property of Point Towing Company but is now in the custody of the federal government at a location outside of this state. For all practical purposes the towboat is nonexistent. It is difficult, at best, to conceive how a proper proceeding in eminent domain could be instituted in these circumstances.

It is contemplated in an eminent domain proceeding, as outlined in Chapter 54 of the Code, that the value of the property sought to be condemned shall be determined by commissioners or witnesses who make their valuations from actual observation of the property. This would be most difficult, if not impossible, in this case. Furthermore, in such proceeding, Code, 1931, 54-2-12, provides that, upon payment by the applicant to the owner of the property, title to such property "shall be absolutely vested in fee simple in the applicant". The language of this statute, of course, is not applicable to the property involved in the case under consideration. However, even if an attempt were made to adapt the statute to personalty, title thereto could not vest in the State in this case for the reason that Point Towing Company is not the owner of the property involved nor does it have any legal interest therein.

In view of the requisites of a proper proceeding in eminent domain, related above, and of the circumstances set out herein, we are of the opinion that the institution of such proceeding could not accomplish its intended aim and would be a useless act. The syllabus in *Gerwig v. The Baltimore and Ohio Railroad Company*, 141 W. Va. 139, 89 S. E. 2d

217, which quotes the syllabus in *Hall* v. *Staunton,* 55 W. Va. 684, 47 S. E. 265, reads as follows: " 'The extraordinary writ of *mandamus* will never be issued in any case where it is unnecessary, or where, if used, it would prove unavailing, fruitless and nugatory. The court will not compel the doing of a vain thing. A mere abstract right, unattended by any substantial benefit to the party asking *mandamus,* will not be enforced by the writ.' Syllabus, *Hall* v. *Staunton,* 55 W. Va. 684." The alternate relief sought here, if granted, would prove unavailing, fruitless and nugatory and therefore must be denied.

For the foregoing reasons the relief prayed for is denied.

*Writing denied.*