PETROPLUS, JUDGE:
For purpose of submission, the above claims were consolidated and represent an aggregate claim of $7,982.96, against the Department of Mental Health of the State of West Virginia, and represent supplies, expendable commodities and services furnished to an Agency of the State for which an appropriation was made by the State Legislature during the preceding fiscal year. The Respondent on October 7, 1970, answered admitting all of the allegations pertaining to each of the claims and requested that the claims be allowed in the amount claimed as the State in equity and in good conscience should pay them. An Amended Answer was filed by the Respondent on December 1,1970, admitting that the Claimants furnished goods and services as alleged in their Petition and that the charges were reasonable, and setting forth that the Respondent did not have sufficient funds remaining in its budgeted account for the payment of said claims during the fiscal year 1969-1970.
The Amended Answer states further that the overcommitment of budgeted funds occurred inadvertently and as the result of negligence or mismanagement rather than any in *183 tentional plan or design on the part of any Agent or Agency of the State of West Virginia. The responsible State Agency believed in good faith that it had sufficient funds remaining in its budgeted account to satisfy said obligations and that since the overcommitment resulted from negligence or mismanagement, and since the State of West Virginia has received the benefit of the goods and services, counsel for the Respondent is of the opinion that said claims constitute a moral obligation on the part of the State of West Virginia and should be allowed. The Answer concludes that to do otherwise would result in irreparable harm to the credit of the State of West Virginia.
Paragraph 7 of the Amended Answer further adds the following suggestion:
“Notwithstanding that counsel for the respondent believes that a moral obligation does exist as hereinabove indicated, it is our strong suggestion that the appropriate individuals and agencies of State government directly charged with the responsibility of expending state funds take adequate and proper steps to insure that such overcommitment of budgeted funds does not again occur. Clearly the laws of West Virginia provide satisfactory safeguards and procedures in the administration of fiscal matters so that when all of the individuals and agencies of State government involved in any way with the expenditure of state funds properly, efficiently and knowl-edgably perform their functions and carry out their responsibilities, overspending of budgeted public funds should not occur, and the budget as adopted by the Legislature will be complied with in all respects.”
The claims were submitted on Petition, Answer and Stipulation as to their accuracy.
A letter from the State Auditor’s Office dated August 5, 1970, addressed to M. Mitchell Bateman, M.D., Director of the Department of Mental Health, from Denzil L. Gainer, State Auditor, copies of which were furnished to the Governor, the Commissioner of the Department of Finance & Administration, Colin Anderson Center and the Legislative Auditor, was filed with the Court pointing out that the invoices were more than six months old and suggesting that immediate steps be taken to determine the responsibility for this condition and that *184 corrective measures be taken to prevent a recurrence of the same. The letter further states:
“A considerable amount of state money has been expended for consultants and system analysis to prevent this very situation. Such a condition does have a bad effect on the state’s credit and does not conform to the statutes which were enacted to safeguard the state and creditors as well.
I should like to point out that the statute is very clear concerning expenditures in excess of appropriations.
Chapter 12, Article 3, Section 14 reads as follows:
‘It shall be unlawful for the superintendent, manager, any officer, or any person or persons, board or body, acting or assuming to act for and on behalf of any institution, kept or maintained in whole or in part by this State, to expend for any fiscal year any greater sum for the maintenance or on account of such institution than shall have been appropriated by the legislature therefor for such year except as provided in section thirteen, article one, chapter twenty-five of this Code.’
Also, Chapter 12, Article 3, Section 15 provides:
‘It shall be unlawful for any such officer, board, body or person to expend for the erection, improvement or repair of any building or structure, or for the purchase of any real estate or other property, or upon any contract or undertaking whatsoever to be performed in whole or in part by the State, any sum exceeding that which shall have been appropriated or authorized therefor by the legislature, nor shall they incur any debt or obligation on any such account not expressly authorized by the legislature, nor use in part payment only upon the purchase or construction of any land or structure any sum which shall have been appropriated or authorized by the legislature in full payment for such object.’
The statute further provides in Section 16 of the chapter and article above cited:
‘Any such officer or person who, in violation of any of the provisions of the two preceding sections, shall expend any sum of money, or incur any debt or obligation, or make or participate in the making of any such contract, or shall be a party to any such transaction in any official capacity, shall be personally liable therefor, both jointly and severally, and an action may be maintained therefor by the State, or any person prejudiced thereby, in any court of *185 competent jurisdiction, and such official shall further be guilty of a misdemeanor, and, upon conviction thereof, be fined not less than ten nor more than five hundred dollars, and may be confined in jail not less than ten days nor more than one year, and, in addition to the penalties herein-before provided, shall forfeit his office. And there shall be no liability upon the State, or the funds thereof, on account of any such debt, obligation or contract.’
While the Court of Claims may feel in its wisdom that there is a moral obligation on the part of the state to pay these unpaid bills, there is also a moral obligation on the part of those in administrative positions to correct such situations which are far too numerous to be condoned.”
In addition to the statutory provisions pointed out by the State Auditor, Chapter 12, Article 3, Section 17 of the West Virginia Code provides:
“Except as provided in this section, it shall be unlawful for any state board, commission, officer or employee: (1) To incur any liability during any fiscal year which cannot be paid out of the then current appropriation for such year or out of funds received from an emergency appropriation; or (2) to authorize or to pay any account or bill incurred during any fiscal year out of the appropriation for the following year, unless a sufficient amount of the appropriation for the fiscal year during which the liability was incurred was cancelled by expiration or a sufficient amount of the appropriation remained unexpended at the end of the year ...”
It is the opinion of this Court that to allow the payment of an illegal claim as a moral obligation of the State, when it is admitted that the spending unit clearly violated the Statute by incurring liabilities which could not be paid out of the current appropriation, clearly exceeds the jurisdiction of the Court. The fact that the parties were mistaken as to the law, and may have acted without any corrupt or criminal intent does not confer jurisdiction or give this Court authority to allow the payment. The general statutory law of the State of West Virginia is binding upon this Court and under the general powers given to the Court in Chapter 14, Article 2, Section 12 of the Code, the Court is authorized to consider claims which, but for the constitutional immunity of the State from suit, could be maintained in the regular Courts of the State. *186 This Court has no existing appropriation for the payment of accrued claims and is constrained to' follow the statutory law of our State.
A similar question was decided adversely to the claimants in the case of State ex rel. Point Towing Company, a corporation, v. Robert P. McDonough, Director of the West Virginia Department of Natural Resources, et al, 150 W.Va. 724, decided July 12, 1966, 149 S.E.2d 302. In an Opinion written by Judge Caplan, reference is made to Code 1931, 12-3-17, hereinbefore mentioned, and the claim of the plaintiff for a Writ of Mandamus to require the State Auditor to issue a requisition for the payment of a towboat illegally purchased in violation of the Statute was denied. The Opinion stated:
“The obvious purpose of the above statute is to prevent a spending unit of the state government from creating a liability which cannot be paid from then existing funds. It expressly precludes the creation of an obligation during a fiscal year which is to be satisfied in the next fiscal year...” (underscoring ours)
Judge Caplan further quoted with approval the case of Shonk Land Co. et al. v. Joachim, et al., 96 W.Va. 708, 123 S.E. 444, considering a like statute, stating:
“The legislative policy is clear, and the statute must not be warped by construction to defeat it. The phrases ‘funds legally at the disposal of the fiscal body,’ and ‘which cannot be paid out of the levy for the current fiscal year,’ refer to the time when the contract is made, and not in futuro. No contract is valid which will bind the levies of future years . . .”
Following Judge Caplan’s Opinion, we must also hold that these contracts are controlled by the Statute and the contention that the Legislature had made an appropriation for the fiscal year 1969-1970, out of which the liability could have been paid is without merit. An officer of a State spending unit must necessarily plan the operations of his Department in such a manner as not to spend funds unless they are actually available in his appropriation. The spending policies of the State are limited by law and anyone dealing with a State Agency must know its powers and limitations. Any contract in viola *187 tion of the Statute is void and cannot be enforced in any Court.
Judge Caplan further stated:
“To declare this contract valid by permitting a strained construction, or a justification, to change the plain provisions of Code, 1931, 12-3-17, would be tantamount to opening the proverbial ‘Pandora’s Box’, and before it could again be secured the fiscal affairs of the State might well decline to a chaotic level, a situation which the above statute was designed to prevent.”
Consequently, we are of the opinion that the contracts before the Court are invalid and that the allowance of any claims based thereon by this Court would be unwarranted and unlawful, not withstanding that both the Claimants and the Attorney General’s Office join in a request that the claims be allowed as lawful obligations of the State of West Virginia. It is true that the commodities and services were furnished and the State has received the benefit thereof, but that in itself is insufficient to establish a legal obligation to make payment when the above quoted Statutes prohibit such conduct. Otherwise, this Court would be condoning the neglect and mismanagement set forth in the Attorney General’s Amended Answer and would be ignoring completely Chapter 5A, Article 3, Section 19 of the West Virginia Code which places a limitation on expenditures, which states:
PURCHASES OR CONTRACTS VIOLATING ARTICLE VOID; PERSONAL LIABILITY.
“If a department purchases or contracts for commodities contrary to the provisions of this article or the rules and regulations made thereunder, such purchase or contract shall be void and of no effect. The head of such department shall be personally liable for the costs of such purchase or contract, and, if already paid out of State funds, the amount thereof may be recovered in the name of the State in an appropriate action instituted therefor.”
The law must be administered as it is written and to do otherwise would be an effort on the part of this Court to control the policy of Government and change the plain provisions of statutory law.
For the foregoing reasons, the claims are denied.
Claims disallowed.
*188 The Airkem decision was applied to the following claims through Per Curiae:

*189