349 S.E.2d 436

**STATE ex rel. the BOARD of ED-
UCATION OF the COUNTY
OF KANAWHA**

v.

**The Honorable Patrick CASEY, as Judge
of the Circuit Court of Kanawha Coun-
ty, West Virginia, and, David P. Gillis-
pie.**

No. 16796.

Supreme Court of Appeals
of West Virginia.

April 4, 1986.

Dissenting Opinion Oct. 8, 1986.

John O. Kizer, Love, Wise & Woodroe, Charleston, for petitioner.

J. David Cecil, Cecil, Barth & Thompson, Charleston, for respondent.

McGRAW, Justice:

The petitioner, the Board of Education of Kanawha County, seeks a writ of prohibition against enforcement of an order by respondent judge, the Honorable Patrick Casey of the Circuit Court of Kanawha County, which mandated that the petitioner place respondent David P. Gillispie in the secondary principalship occupied by the least secondary principal in Kanawha County, contending that the respondent judge exceeded his authority by entry of this order. Specifically, the petitioner complains that Gillispie failed to exhaust his administrative remedies prior to securing relief below by way of mandamus; that the trial court's order impermissibly infringed upon the discretion of the county superintendent and board of education with respect to transfer; and, that the court's order improperly required it to violate certain statutory provisions with respect to the removal of professional school personnel. Finding no merit in any of these contentions, we therefore dismiss.

On February 27, 1985, Gillispie was notified that he was being recommended for placement on administrative transfer due to the proposed closure of his school. This action was taken pursuant to West Virginia Code § 18A–2–7 (1984 Replacement Vol.), which provides, in relevant part, that, "[A]n employee shall be notified in writing by the superintendent on or before the first Monday in April if he is being considered for transfer...." On May 6, 1985, the Board of Education voted to place Gillispie, along with several others, on "administrative transfer." This action was also taken pursuant to West Virginia Code § 18A–2–7 (1984 Replacement Vol.), which further provides that, "The superintendent at a meeting of the board on or before the first Monday in May, shall furnish in writing to the board a list of teachers and other employees to be considered for transfer and subsequent assignment for the ensuing school year."

On July 1, 1985, Gillispie filed a petition for writ of mandamus in the Circuit Court of Kanawha County, requesting that he be placed in the secondary principalship occupied by the least senior principal under West Virginia Code § 18A–4–8b (1984 Replacement Vol.), which provides that, "Whenever a county board is required to reduce the number of professional personnel in its employment, the employee with the least amount of seniority shall be properly notified and released from employment pursuant to the provisions of section two [§ 18A–2–2], article two of this chapter...." Following a hearing on Gillispie's petition, the circuit court held that by closing Gillispie's school, the Kanawha County Board of Education was effectively reducing the number of secondary principalships by one, thereby triggering its obligation to release the least senior secondary principal in favor of Gillispie. Although the displaced least senior secondary principal was apparently placed in one of three principalships which became available in April and May 1985, the Board of Education nevertheless seeks prohibition of enforcement of the circuit court's order.

I

The petitioner first asserts the inappropriateness of mandamus given Gillispie's failure to exhaust available administrative remedies. This assertion is founded upon West Virginia Code § 18A–2–7 (1984 Replacement Vol.), which provides that after notification of proposed transfer:

Any teacher or employee who desires to protest such proposed transfer may request in writing a statement of the reasons for the proposed transfer. Such statement of reasons shall be delivered to the teacher or employee within ten days of the receipt of the request. Within ten days of the receipt of the statement of the reasons, the teacher or employee may make written demand upon the superintendent for a hearing on the proposed transfer before the county board of education. The hearing on the proposed transfer shall be held on or before the first Monday in May. At the hearing, the reasons for the proposed transfer must be shown.

Unquestionably, as this Court held in Syllabus Point 1 of *Daurelle v. Traders Federal Savings & Loan Association,* 143 W.Va. 674, 104 S.E.2d 320 (1958), "The general rule is that where an administrative remedy is provided by statute or by rules and regulations having the force and effect of law, relief must be sought from the administrative body, and such remedy must be exhausted before the courts will act." *See also* Syl. pt. 1, *Hechler v. Casey,* 175 W.Va. 434, 333 S.E.2d 799 (1985); Syl. pt. 1, *Cowie v. Roberts,* 173 W.Va. 64, 312 S.E.2d 35 (1984); Syl. pt. 3, *State ex rel. Arnold v. Egnor,* 166 W.Va. 411, 275 S.E.2d 15 (1981); Syl. pt. 3, *State ex rel. Gooden v. Bonar,* 155 W.Va. 202, 183 S.E.2d 697 (1971); Syl. pt. 2, *Bank of Wheeling v. Morris Plan Bank & Trust Co.,* 155 W.Va. 245, 183 S.E.2d 692 (1971); Syl., *Capitol Business Equipment, Inc. v. Gates,* 155 W.Va. 260, 184 S.E.2d 125 (1971); Syl. pt. 1, *State ex rel. Burchett v. Taylor,* 150 W.Va. 702, 149 S.E.2d 234 (1966). On the other hand, the doctrine of exhaustion of administrative remedies is inapplicable where resort to available procedures would be an exercise in futility. *See Mountaineer Disposal Service, Inc. v. Dyer,* 156 W.Va. 766, 772, 197 S.E.2d 111, 115 (1973) (rejecting the applicability of the exhaustion of administrative remedies doctrine where "it is obvious that further pursuit of administrative remedies ... will be unavailing."); *see also* 4 K. Davis, *Administrative Law Treatise* § 26:11 (1983); A. Neely, *Administrative Law in West Virginia* § 605 (1962); 73 C *Public Administrative Law and Procedure* § 40, at 463–64 (1983).

The exhaustion doctrine contemplates an efficacious administrative remedy. Certainly, in the present action, it would have been pointless for Gillispie to have protested his transfer from a school which was to be closed. He objected, not to the proposed transfer, which was inevitable, but rather to the manner in which it was being executed. The administrative procedures provided under West Virginia Code § 18A–2–7 (1984 Replacement Vol.)

would not have afforded an opportunity for Gillispie to secure the relief desired. Therefore, because recourse to those procedures would have been a futile gesture, Gillispie was not precluded by the exhaustion of administrative remedies doctrine from seeking extraordinary relief in circuit court.

II

The petitioner's second contention is that the trial court's order impermissibly impinged upon the discretion of the county superintendent and board of education with respect to transfers under West Virginia Code § 18A–2–7 (1984 Replacement Vol.), which provides, in pertinent part, that, "The superintendent, subject only to approval of the board, shall have authority to assign, transfer, promote, demote or suspend school personnel and to recommend their dismissal pursuant to provisions of this chapter." In *State ex rel. Hawkins v. Tyler County Board of Education*, 166 W.Va. 363, 275 S.E.2d 908, 911 (1980), we remarked that:

> This provision vests great discretion in the county superintendent and the county board of education to transfer and assign teachers to designated schools and this Court will not interfere with the exercise of that discretion where such action is taken in good faith for the benefit of the school system and is not arbitrary. *Bates v. Board of Education of Mineral County*, 133 W.Va. 225, 55 S.E.2d 777 (1949); *Weaver v. Board of Education of Calhoun County*, 128 W.Va. 42, 35 S.E.2d 679 (1945).

This discretion with respect to transfer, however, is clearly not without limitation. Even in *State ex rel. Hawkins v. Tyler County Board of Education*, 166 W.Va. at 367, 275 S.E.2d at 912, this Court was cautious to note:

> [T]he power of the county superintendent to transfer teachers must be exercised in a reasonable manner and in the best interests of the schools. Arbitrary and capricious use of the power will not be permitted. *Beverlin v. Board of Education of Lewis County*, [158] W.Va.

[1067], 216 S.E.2d 554 (1975); *Neal v. Board of Education of Putnam County*, 116 W.Va. 435, 181 S.E. 541 (1935). Mandamus will lie to control a board of education in the exercise of its discretion only upon a showing of caprice, passion, partiality, fraud, arbitrary conduct, some ulterior motive or misapprehension of the law. *State ex rel. Withers v. Board of Education of Mason County*, 153 W.Va. 867, 172 S.E.2d 796 (1970); *State ex rel. Payne v. Board of Education of Jefferson County*, 135 W.Va. 349, 63 S.E.2d 579 (1951).

In Syllabus Point 1 of *Hawkins, supra*, for example, this Court held that, "The transfer or reassignment of a teacher by a county board of education for his or her refusal to violate county policy is an arbitrary and capricious act." Similarly, in Syllabus Point 3 of *Trimboli v. Board of Education*, 163 W.Va. 1, 254 S.E.2d 561 (1979), this Court held that violation of state educational policy is an arbitrary and capricious act, stating that:

> Failure by any board of education to follow the evaluation procedure in West Virginia Board of Education Policy No. 5300(6)(a) prohibits such board from discharging, demoting or transferring an employee for reasons having to do with prior misconduct or incompetency that has not been called to the attention of the employee through evaluation, and which is correctable.

*See also* Syl., *Holland v. Board of Education*, 174 W.Va. 393, 327 S.E.2d 155 (1985); Syl. pt. 1, *Lipan v. Board of Education*, 170 W.Va. 553, 295 S.E.2d 44 (1982); Syl. pt. 3, *Wilt v. Flanigan*, 170 W.Va. 385, 294 S.E.2d 189 (1982); *State ex rel. Hawkins v. Tyler County Board of Education*, 166 W.Va. 375, 275 S.E.2d at 916; Syl. pt. 1, *Mason County Board of Education v. State Superintendent of Schools*, 165 W.Va. 732, 274 S.E.2d 435 (1980); *Powell v. Brown*, 160 W.Va. 723, 726–28, 238 S.E.2d 220, 222 (1977). Certainly, if the violation of state or county educational policy with respect to transfer is arbitrary and capricious, constituting an abuse of discretion, then violation of a

state statute with respect to transfer would also be impermissible.

■ West Virginia Code § 18A–4–8b (1984 Replacement Vol.) imposes a clear limitation on the discretion of county superintendents and boards of education with respect to transfer of professional educational personnel:

> Whenever a county board is required to reduce the number of professional personnel in its employment, the employee with the least amount of seniority shall be properly notified and released from employment pursuant to the provisions of section two [§ 18A–2–2], article two of this chapter: Provided, that such employee shall be employed in any other professional position where he had previously been employed or to any lateral area for which he is certified and/or licensed if his seniority is greater than the seniority of any other employee in that area of certification and/or licensure.

West Virginia Code § 18A–2–9 (1984 Replacement Vol.) provides that, "Upon the recommendation of the county superintendent of schools, the county board of education shall employ and assign, through written contract, public school principals who shall supervise the management and the operation of the school or schools to which they are assigned." With respect to qualifications for service as a principal, West Virginia Code § 18A–2–9 (1984 Replacement Vol.) further provides that, "Such principals shall hold valid administrative certificates appropriate for their assignments." Finally, under West Virginia Code § 18A–4–3 (Supp.1985), principals receive salary increments ranging from four percent to six and one-half percent calculated by multiplying the basic salary for teachers in accordance with the classification of certification and the training of individual principals by percentage rates which correspond to the number of teachers supervised. Therefore, the decision to close Gillispie's school clearly constituted a reduction in force in a distinct classification of professional educational personnel, secondary principalships, triggering the petitioner's statutory duty to conform to the procedural mandates of West Virginia Code § 18A–4–8b (1984 Replacement Vol.).

■ Rather than statutory compliance, the petitioner attempted to avoid its mandatory reduction in force duties by placing Gillispie on "administrative transfer," a state of limbo in which his placement in another secondary principalship was entirely contingent upon the uncertain possibility that another secondary principal would retire or resign. Although three resignations did subsequently occur, they were not effective until June 28, 1985, over four months following a formal vote by the petitioner on February 21, 1985, to close Gillispie's school by April 1, 1985. Gillispie was notified by the county superintendent on February 27, 1985, that, "At a meeting of the Kanawha County Board of Education on February 21, 1985, the Board decided to close your school. Therefore, it will be necessary to place you on Administrative Transfer." At that time, there were no secondary principalship vacancies and, therefore, the petitioner's vote to close Gillispie's school effectively reduced the number of secondary principalships by one. Granted the clear legislative intent that reductions in force of professional educational personnel be conducted on the basis of seniority, we concur with the circuit court's implicit holding that where no vacancy in a secondary principalship currently exists at the time a county board of education votes to close a particular secondary school, a reduction in force of secondary principalships occurs, imposing upon the county board of education, under West Virginia Code § 18A–4–8b (1984 Replacement Vol.), a nondiscretionary duty to notify and release from employment, pursuant to the provisions of West Virginia Code § 18A–2–2 (Supp.1985), the secondary principal with the least amount of seniority, and to place in such secondary principalship the principal whose school is to be closed. Accordingly, we reject the petitioner's contention that the circuit court's award of a writ of mandamus in this proceeding impermissibly interfered with its discretion regarding the transfer of educational personnel.

### III

The petitioner's final assertion is the alleged impropriety of the circuit court's

mandate that it release from employment its least senior secondary principal, whose own invocation of seniority rights upon reduction in force would most likely result in the displacement of another professional employee. Noting the procedural requirements with respect to discharge and transfer under West Virginia Code §§ 18A-2-2 and -7 (1984 Replacement Vol.), the petitioner contends, in effect, that even though it violated Gillispie's statutory rights, redress of this unlawful conduct after the first of April, the date by which notice of discharge or transfer must be given, necessitated violation of another employee's statutory rights, and, therefore, issuance of a writ of mandamus was improper.

■ Unquestionably, as this Court held in Syllabus Point 1 of *State ex rel. Pardue v. County Court*, 105 W.Va. 235, 141 S.E. 874 (1928), "Mandamus will be denied where its issuance would be unavailing, or where it would require respondent to perform an act illegal, or in contravention of public policy." *See also* Syl. pt. 3, *State ex rel. Henson v. Gore*, 151 W.Va. 97, 150 S.E.2d 575 (1966); Syl. pt. 4, *State ex rel. Point Towing Co. v. McDonough*, 150 W.Va. 724, 149 S.E.2d 302 (1966); Syl. pt. 3, *State ex rel. County Court v. Arthur*, 150 W.Va. 293, 145 S.E.2d 34 (1965); Syl. pt. 2, *State ex rel. Damron v. Ferrell*, 149 W.Va. 773, 143 S.E.2d 469 (1965); *State ex rel. Summerfield v. Maxwell*, 148 W.Va. 535, 540, 135 S.E.2d 741, 745 (1964); Syl. pt. 7, *State ex rel. City of Huntington v. Heffley*, 127 W.Va. 254, 32 S.E.2d 456 (1945); Syl. pt. 2, *Butler v. State Compensation Commissioner*, 107 W.Va. 619, 149 S.E. 828 (1929); Syl. pt. 6, *State ex rel. Matheny v. County Court*, 47 W.Va. 672, 35 S.E. 959 (1900); Syl., *Dempsey v. Board of Education*, 40 W.Va. 99, 20 S.E. 811 (1894); *Woodford v. Hull*, 31 W.Va. 470, 471, 7 S.E. 450, 451 (1888). On the other hand, in Syllabus Point 3 of *State ex rel. Schenerlein v. City of Wheeling*, 144 W.Va. 434, 108 S.E.2d 788 (1959), *overruled on other grounds*, Syl. pt. 2, *State ex rel. Summerfield v. Maxwell, supra*, although recognizing that, "Mandamus will not lie to compel the performance of an illegal or unlawful act," this Court further held that, "[I]t

should not be refused in a case in which the use of the writ is proper when the effect of such refusal is to permit the committing of an illegal or unlawful act." For example, in *Dials v. Blair*, 144 W.Va. 764, 767-70, 111 S.E.2d 17, 20-21 (1959); this Court held that mandamus would lie to compel a board of education to pay for services furnished to the school system notwithstanding one member's pecuniary interest in the provider of such services in arguable violation of West Virginia Code § 61-10-15 (1984 Replacement Vol.), which currently provides that, "It shall be unlawful for any member ... of any ... county or district board ... to be or become pecuniarily interested, directly or indirectly, in the proceeds of any contract or service ... which such member ... may have any voice, influence or control...."

■ Obviously, a board of education cannot be permitted to violate with impunity the seniority provisions of West Virginia Code § 18A-4-8b (1984 Replacement Vol.), which anticipate full compliance prior to April first in order to avoid any conflict with the provisions of West Virginia Code §§ 18A-2-2 and -7 (1984 Replacement Vol.), only to then raise its own illegal action as a defense to an efficacious remedy. In the normal course of events, full compliance with West Virginia Code § 18A-4-8b (1984 Replacement Vol.) would result in no conflict with the provisions of either West Virginia Code §§ 18A-2-2 or -7 (1984 Replacement Vol.) with respect to discharge or transfer. Where, however, as in the present proceeding, violation by the board of education prevents notice of discharge or transfer by the first of April to employees who are affected by the exercise of another employee's seniority rights upon a reduction in force, it is sufficient if, in the award of a writ of mandamus compelling recognition of those seniority rights, provision is made for notice on the first of the month immediately following issuance of the writ to employees who are affected, as well as for the compliance with the other procedural protections of West Virginia Code §§ 18A-2-2 and -7 (1984 Replacement Vol.). Apparently, because second-

ary principalship vacancies had become available at the time of the issuance of a writ of mandamus in the present action, the only employee affected, the least senior secondary principal, did not need to avail himself of the notice and hearing provisions under West Virginia Code §§ 18A–2–2 and –7 (1984 Replacement Vol.). Therefore, we reject the petitioner's final contention.

Accordingly, for the foregoing reasons, the petitioner's request for writ of prohibition is hereby denied.

Writ denied.

NEELY, Justice, dissenting:

This case requires the Court to decide which of two conflicting rights should be protected. Because I believe the majority does not choose wisely, I dissent.

*W.Va.Code* 18A–2–7 [1977] provides in pertinent part:

[A]n employee shall be notified in writing by the superintendent on or before the first Monday in April if he is being considered for transfer or to be transferred. Any teacher or employee who desires to protest such proposed transfer may request in writing a statement of the reasons for the proposed transfer. Such statement of reasons shall be delivered to the teacher or employee within ten days of the receipt of the request. Within ten days of the receipt of the statement of the reasons, the teacher or employee may make written demand upon the superintendent for a hearing on the proposed transfer before the county board of education. The hearing on the proposed transfer shall be held on or before the first Monday in May. At the hearing, the reasons for the proposed transfer must be shown.

The superintendent at a meeting of the board on or before the first Monday in May, shall furnish in writing to the board a list of teachers and other employees to be considered for transfer and subsequent assignment for the next ensuing school year. All other teachers and employees not so listed shall be considered as reassigned to the positions or jobs held at the time of this meeting. The list of those recommended for transfer shall be included in the minute record of such meeting and all those so listed shall be notified in writing, which notice shall be delivered in writing by certified mail, return receipt requested, to such persons' last known addresses within ten days following said board meeting, of their having been so recommended for transfer and subsequent assignment and the reasons therefor.

This Court has held that the notice and hearing provisions of *W.Va.Code* 18A–2–7 [1977] "must be complied with strictly." Syl.Pt. 2, *Morgan v. Pizzino*, 163 W.Va. 454, 256 S.E.2d 592 (1979). In *Lavender v. McDowell County Bd. of Education*, 174 W.Va. 513, 327 S.E.2d 691 (1984), we stated:

The statute [*W.Va.Code* 18A–2–7 [1977]] establishes an orderly procedure which must be strictly followed before a nonprobationary school employee may be properly transferred. The first step of this procedure requires that the employee be notified of a contemplated transfer in writing by the superintendent before the first Monday in April.

174 W.Va. 516, 327 S.E.2d at 693.

As the majority notes, *W.Va.Code* 18A–4–8b [1983] requires that the least senior secondary principal in Kanawha County be transferred and that Mr. Gillespie assume that principalship. However, because it is now later than the first Monday in April of 1985, the board cannot notify the least senior principal in Kanawha County in time to satisfy the requirements of *W.Va.Code* 18A–2–7 [1977]. Thus, if we now order the board to comply with *W.Va.Code* 18A–4–8b [1983], we require it to violate the notice requirement of *W.Va.Code* 18A–2–7 [1977]. On the other hand, if we require (as we have in the past) strict compliance with the notice provisions of *W.Va.Code* 18A–2–7 [1977], we deny Mr. Gillespie his rights under *W.Va.Code* 18A–4–8b [1983]. Someone—either Mr. Gillespie or the least senior principal in Kanawha County—will be denied his rights. The question is simply, whose ox shall we gore? I believe that the

correct answer can be found by reference to time-honored principles of equity.

It is well recognized in this State that "the extraordinary remedy of mandamus, though on the law side of the court, is limited as to time by the equitable doctrine of laches." *State ex rel. Waller Chemicals v. McNutt*, 152 W.Va. 186, 160 S.E.2d 170, 175 (1968). In *McNutt*, we held at Syl. Pt. 3:

> The writ of mandamus will be refused when the petitioner has unreasonably delayed his application for such writ and by reason of the delay the rights of the defendant or innocent third parties will be prejudiced by the issuance of the writ.

In this case, Mr. Gillespie sat on his rights to the legal detriment of an innocent third party, *viz.*, the least senior secondary principal in Kanawha County. Mr. Gillespie was notified that he was to be considered for placement on administrative transfer on 27 February 1985—more than a month before the April notification deadline. He elected not to pursue the administrative remedies provided by *W.Va.Code* 18A–2–7 [1977]. Mr. Gillespie did not file his petition for a writ of mandamus until 1 July 1985—a full three months after the board was required under *W.Va.Code* 18A–2–7 [1977] to notify employees being considered for transfer. Not only did Mr. Gillespie fail to *exhaust* his *administrative* remedies, he failed to seek *any remedy at all* until well after notification was required. Had Mr. Gillespie sought relief in a more timely fashion, the Court would not now be faced with this unnecessary dilemma.

"Mandamus will be denied where its issuance would be unavailing, or where it would require respondent to perform an act illegal, or in contravention of public policy." Syl. Pt. 1, *State ex rel. Pardue v. County Court*, 105 W.Va. 235, 141 S.E. 874 (1928). There may indeed be times when it is necessary to compel the performance of one illegal act in order to avoid sanctioning the performance of another. However, when the relief sought would not have compelled the performance of an illegal act had such relief been sought in a timely manner,

I believe that the writ of mandamus is barred by laches. Accordingly, I dissent.

I am authorized to say that Mr. Justice Brotherton joins in this dissent.