430 S.E.2d 331

**HARRISON COUNTY BOARD OF EDUCATION, Petitioner Below, Appellant,**

v.

**Jeffrey COFFMAN, Respondent Below, Appellee.**

**No. 21269.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 20, 1993.

Decided April 22, 1993.

David J. Romano, Gregory H. Schillace, Clarksburg, for appellant.

John Everett Roush, Charleston, for appellee.

PER CURIAM:

The Harrison County Board of Education appeals an order of the Circuit Court of Harrison County requiring the Board to transfer Jeffrey Coffman to a day-shift custodian position without changing his employment term because the Board showed favoritism when it transferred other custodians to the positions without changing their employment terms. On appeal, the Board argues that because the successful candidates' transfers were the result of school closings, their subsequent assignments without any employment term changes to the day-shift positions did not show favoritism. Because we agree that the Board showed favoritism in failing to

transfer Mr. Coffman, we affirm the decision of the circuit court.

Mr. Coffman, who began working for the Board in 1978, is employed as a Custodian III at Liberty High School under a 261–day employment contract. Before the 1987–88 school year, Mr. Coffman worked the afternoon-shift (2 p.m. to 10 p.m.) at Liberty High. However, because a reduction-in-force, effective for the 1987–88 school year, cut one custodial position at Liberty High, Mr. Coffman, as the then least senior custodian, was reassigned to the night-shift (10 p.m. to 6 a.m.). Mr. Coffman continued to work the night-shift for the 1988–89 school year.

In the Spring of 1989, the Board elected to close two schools for the 1989–90 school year, and the custodians assigned to those schools were placed on the transfer list. The transferred custodians were: Gordon Bland, a Board employee since 1975 with a 261–day employment contract, and John Allawat, a Board employee since 1983 with a 220–day employment contract.[1] Because of budgetary constants, the Board also decided that all new custodian positions would have a 200–day employment contract for the 1989–90 school year.

Two Custodian III positions at Liberty High became vacant for the 1989–90 school year and in April 1989, the Board posted those positions. Both positions were posted as full time day-shift positions, either 6 a.m. to 2 p.m. or 7 a.m. to 3 p.m., with a 200–day employment term. Mr. Coffman, Mr. Bland, Mr. Allawat and others applied for the day-shift positions. Both Mr. Coffman and Mr. Bland conditioned their applications on retaining their 261–day employment contracts.

Mr. Bland and Mr. Allawat were awarded the vacant day-shift Custodian III positions and the Board allowed them to retain their respective employment terms of 261 and 220 days. The Board did not consider Mr. Coffman's bids because his applications were conditioned on retaining his 261–day employment term, which, according to the Board, "altered the Board of Education's

offer of employment and was unacceptable due to the fact that the positions called for a 200–day employment term."

On May 17, 1989, Mr. Coffman, alleging that the positions should have been awarded based on seniority, filed an employment grievance, pursuant to *W.Va.Code* 18–29–1 [1985] *et seq.*, which was denied at levels one and two. After the Board waived its right to conduct a level three hearing, Mr. Coffman's appeal was considered by a hearing examiner of the W.Va. Education and State Employees Grievance Board. The hearing examiner found that the Board engaged in favoritism when it appointed Mr. Bland and Mr. Allawat to the day-shift positions and permitted them to retain their 200–day plus employment contracts but refused the same treatment to Mr. Coffman. After the circuit court affirmed the hearing examiner's decision, the Board appealed to this Court.

I

County boards of education are required to fill all school service personnel positions on the basis of seniority, qualifications and evaluation of past service. *W.Va.Code* 18A–4–8b [1990] states, in pertinent part:

A county board of education shall make decisions affecting promotion and filling of any service personnel positions of employment or jobs occurring throughout the school year that are to be performed by service personnel as provided in section eight [§ 18A–4–8], article four of this chapter, on the basis of seniority, qualifications and evaluation of past service.

In Syllabus Point 3, *Dillon v. Bd. of Ed. of the County of Wyoming*, 177 W.Va. 145, 351 S.E.2d 58 (1986) (a professional employment case), this Court said:

County boards of education have substantial discretion in matters relating to the hiring, assignment, transfer, and promotion of school personnel. Nevertheless, this discretion must be exercised reasonably, in the best interests of the

---

1. Although the school closings affected other service personnel who were subsequently reassigned, only the appointments of Mr. Bland and Mr. Allawat directly affected Mr. Coffman.

schools, and in a manner which is not arbitrary and capricious.

In *Dillon,* we noted that "the legislature must have intended seniority to be the determinative factor when the applicants for a promotion or a vacant teaching position are otherwise" similarly qualified. *Dillon,* 177 W.Va. at 148–49, 351 S.E.2d at 62. Although the statutory language interpreted by *Dillon* is not identical to *W.Va.Code* 18A–4–8b [1990], the legislature's intention to emphasize seniority as the determinative factor in decisions affecting the promotion and filling of school service personnel positions is also clear. *See* Syllabus Point 2, *Bd. of Educ. of County of Harrison v. Bowers,* 183 W.Va. 399, 396 S.E.2d 166 (1990) (although professional administrators accrue seniority, they "may not use seniority to laterally transfer and 'bump' another professional administrator"). *See also State ex rel Melchiori v. Bd. of Educ. of the County of Marshall,* 188 W.Va. 575, 425 S.E.2d 251 (1992) (requiring a board to consider the years of teaching experience in addition to seniority when deciding the displaced teachers' reassignments).

County boards of education are also prohibited from showing favoritism among their employees. *W.Va.Code* 18–29–2(*o*) [1992] provides the following definition for favoritism:

"Favoritism" means unfair treatment of an employee as demonstrated by preferential, exceptional or advantageous treatment of another or other employees.

*W.Va.Code* 18A–4–8b [1990] requires county boards of education to consider applicants in the following order:

(1) Regularly employed service personnel;

(2) Service personnel whose employment has been discontinued in accordance with this section;

(3) Professional personnel who held temporary service personnel jobs . . .;

(4) Substitute service personnel; and

(5) New service personnel.

*W.Va.Code* 18A–4–8b [1990] also requires that preference be given to applicants who have been discharged during a reduction in the work force and "placed upon a preferred recall list." [2] Thus the statute requires that except for a preference given to personnel on the preferred recall list, decisions of a county board of education affecting service personnel's promotion and filling of vacant service personnel positions must be based on seniority, qualifications and evaluation of past service and the board must consider first the applicants who are regularly employed service personnel.

■ In the present case, the Board argues that the placement of Mr. Bland and Mr. Allawat on the transfer list created a special circumstance that distinguishes Mr. Bland and Mr. Allawat from Mr. Coffman. The Board maintains that the employment terms of Mr. Bland and Mr. Allawat were protected because they had continuing employment contracts under *W.Va.Code* 18A–2–6 [1989], which provides in pertinent part:

**2.** *W.Va.Code* 18A–4–8b [1992] provides in pertinent part:

All decisions by county boards of education concerning reduction in work force of service personnel shall be made on the basis of seniority, as hereinafter provided.

. . . . .

Should a county board of education be required to reduce the number of employees within a particular job classification, the employee with the least amount of seniority within that classification or grades of classification shall be properly released.

. . . . .

All employees whose seniority with the county board is insufficient to allow their

retention by the county board during a reduction in work force shall be placed upon a preferred recall list and shall be recalled to employment by the county board on the basis of seniority.

. . .

No position openings may be filled by the county board, whether temporary or permanent, until all employees on the preferred recall list have been properly notified of existing vacancies and have been given an opportunity to accept reemployment. . . .

After three years of acceptable employment, each service personnel employee who enters into a new contract of employment with the board shall be granted continuing contract status.... The continuing contract of any such employee shall remain in full force and effect except as modified by mutual consent of the school board and the employee, unless and until terminated with written notice....

The Board also claims that *W.Va.Code* 18A–4–8 [1992] protects Mr. Bland and Mr. Allawat from changes in their employment terms by providing in pertinent part:

No service employee, without his written consent, may be reclassified by class title, nor may a service employee, without his written consent, be relegated to any condition of employment which would result in a reduction of his salary, rate of pay, compensation or benefits earned during the current fiscal year or which would result in a reduction of his salary, rate of pay, compensation or benefits for which he would qualify by continuing in the same job position and classification held during said fiscal year and subsequent years.

Both of these code sections allow a service employee's contract to be modified by mutual consent.

According to the Board, the statutory provisions do not apply uniformly. When Mr. Coffman, a regular employee with a 261–day employment contract, applied for the day-shift positions, he could not retain his 261–day contract but must accept a new 200–day contract. However, when Mr. Bland and Mr. Allawat, regular employees on the transfer list with 261 and 220–day employment contracts, respectively, applied for the day-shift positions, they retained their contracts and could not be required to accept 200–day contracts.

The Board's justification for distinguishing between involuntary and voluntary transfers was its "determination that no employees would lose their jobs" because of the school closings. The Board decided that "a reduction in employees to compensate for these closed schools would be done by retirement and attrition and not by a reduction in force." In order to accomplish this, the Board decided to place the service employees affected by the school closings on the transfer list under *W.Va.Code* 18A–2–7 [1990] (transfer of school personnel) and not to use the reduction in work force provisions of *W.Va.Code* 18A–4–8b [1992]. The Board decided that Mr. Bland's and Mr. Allawat's 200–day plus employment terms were protected by *W.Va.Code* §§ 18A–2–6 [1989] (continuing contract) and 18A–4–8 [1992] (relegation clause)[3], but that Mr. Coffman's 261–day employment term was not protected.

The Board, because of its policy, had to find positions for the custodians from the closed schools. If the custodians from the closed schools were not appointed to new positions, they might have sought to end their state of limbo on the transfer list by requiring the Board to comply with the reduction in work force provisions of *W.Va.Code* 18A–4–8b [1992].[4] In *State ex rel. Bd. of Ed. v. Casey*, 176 W.Va. 733, 349 S.E.2d 436 (1986), a secondary principal, who was placed on "administrative transfer" because of the closing of his school, sought a writ of mandamus to force the Kanawha County Board of Education to place him in the position occupied by the least senior secondary principal.[5] In *Casey*, we noted that because no secondary school vacancies existed at the time of the

---

**3.** Apparently the Board allowed employees transferred because of school closings one transfer bid under their former employment contracts, but thereafter, all subsequent transfer bids "did not necessarily retain the employees'" employment contracts.

**4.** If the Board had reduced the work force, the custodians with the least seniority would have been discharged. Assuming that the custodians from the closed schools were not the least senior, they would have been assured continued employment by the Board without any change in employment terms.

**5.** Although *Casey* cites *W.Va.Code* 18A–4–8b (1984 Replacement Vol.), as the statutory provision dealing with the employment, promotion and transfer of professional personnel and their seniority, those provisions are currently found in *W.Va.Code* 18A–4–7a [1992].

school closing, the Board's "vote to close Gillispie's [the affected secondary principal] school effectively reduced the number of secondary principalships by one," which triggered under the statutory provisions the Board's "nondiscretionary duty to notify and release from employment ... the secondary principal with the least amount of seniority...." *Casey*, 176 W.Va. at 737, 349 S.E.2d at 440. In *Casey*, we noted that "full compliance with ... [the Code] would result in no conflict with" the other Code provisions pertaining to the release of the least senior principal. *Casey*, 176 W.Va. at 738, 349 S.E.2d at 441.

■ The Board was also prohibited from reducing the employment terms for Mr. Bland and Mr. Allawat because the Board failed to comply with the procedures in *W.Va.Code* 18A–2–6 [1989] to terminate their contracts. In Syllabus, *Bd. of Educ. of County of Fayette v. Hunley*, 169 W.Va. 489, 288 S.E.2d 524 (1982), we held that in order "to reduce the working hours of a service employee by one half, the board must comply with the procedures set out in *W.Va.Code*, 18A–2–6 [1973]." In *Hunley* we noted that the "board had good intentions in trying to retain the women [secretaries who had over ten years of service with the board] in some capacity, but they nonetheless failed to follow the statutory procedure." *Hunley*, 169 W.Va. at 492, 288 S.E.2d at 525.

The present case is similar to both *Casey* and *Hunley*, because we are again required to decide between conflicting school personnel rights caused by the Board's failure to comply with the statutory procedures for school closings.[6] Given the circumstances of the present case, we agree that it would be unfair to impose the 200–day custodian

employment contracts on Mr. Bland and Mr. Allawat. However, if Mr. Bland (13 years seniority) and Mr. Allawat (5 years seniority) can transfer their employment contracts and Mr. Coffman cannot, then Mr. Coffman, with 11 years seniority, remains on the night-shift while a custodian with less seniority works the day-shift.[7] Because there is no statutory justification to distinguish Mr. Coffman from Mr. Bland and Mr. Allawat, we find that the Board showed favoritism when it rejected Mr. Coffman's application for a day-shift custodial position at Liberty High because he sought to retain his 261–day employment contract.

Because *W.Va.Code* 18A–4–8b [1990] requires the Board to make decisions affecting the filling of service personnel positions "on the basis of seniority, qualifications and evaluation of past service," we find that the Harrison County Board of Education acted arbitrarily and capriciously in failing to award Mr. Coffman, the candidate with the second highest seniority, one of posted day-shift positions at Liberty High and allow him to retain his 261–day contract.

For the above stated reasons, the decision of the Circuit Court of Harrison County is affirmed.

Affirmed.

---

**6.** Although the record does not specify the number of vacancies that existed for Custodian III positions at the time the Board voted to close the schools, the Board, in its brief, acknowledges that it "had the option of eliminating these positions." Apparently because Mr. Bland's and Mr. Allawat's schools were closed, the Board thought Mr. Bland and Mr. Allawat would have been released, rather than the least senior employees within the particular job classification. *See W.Va.Code* 18A–4–8b [1990] *supra* note 2, for the provisions requiring the

release of the least senior employee in the job classification.

**7.** The requirement that each service personnel vacancy be posted (*Marion County Bd. of Educ. v. Bonfantino*, 179 W.Va. 202, 366 S.E.2d 650 (1988) (posting required to fill classroom teacher vacancy)), means every position should be filled based on "seniority, qualifications and evaluation of past service." *W.Va.Code* 18A–4–8b [1990]. Allowing Mr. Coffman to retain his 261–day employment contract does not impose any additional financial burden on the Board.