383 S.E.2d 851

**James A. BEINE**

v.

**BOARD OF EDUCATION OF CABELL COUNTY, et al.**

No. 18806.

Supreme Court of Appeals of West Virginia.

July 27, 1989.

Herbert H. Henderson, Gail Henderson–Staples, Henderson & Henderson, Huntington, for James A. Beine.

Edward M. Kowal, Jr., Huntington, for Cabell Co. Bd. of Educ.

WORKMAN, Justice:

James Beine was discharged as a junior high school counselor by the Cabell County Board of Education ("Board") and filed suit in Cabell County Circuit Court alleging breach of contract, religious discrimination, outrageous and intentional conduct, false and misleading statements, denial of due process, and breach of the implied covenant

of good faith and fair dealing. A jury was empanelled and evidence taken. At the conclusion of all the evidence, the circuit court found as a matter of law that the failure of defendant Board to comply with the rules and regulations pertaining to dismissal of school personnel constituted a breach of plaintiff's continuing contract, and directed a verdict in his favor for damages in the amount of $63,245.13. The court further found that there was insufficient evidence presented to support the remaining counts of the complaint and directed a verdict thereon in favor of the Board. Reinstatement was stayed for thirty days to give the Board the opportunity to institute termination proceedings properly.

Beine filed an appeal[1] and the Board made cross-assignments of error. Upon review of the issues presented, we affirm the ruling of the circuit court.

The appellant was hired by the Board of Education in 1982 as a junior high school counselor and received a teacher's continuing contract of employment in 1984. During the 1984–85 school year Beine's supervisor recommended his termination, and initiated preliminary procedures. Beine filed a grievance and the termination proceedings were dropped. He was then placed on the transfer list and assigned temporarily to the central office.

In the Spring of 1985, the Board requested its attorney, James Colburn, to investigate Beine and examine his personnel file. During his investigation, Colburn determined Beine paid no taxes and gave all his salary to a nonprofit organization called St. John Bosco ("SJB") located in Missouri. By letter dated July 26, 1985, Mr. Colburn requested that Beine explain his tax status.

On August 21, 1988, Robert Cavanaugh, Beine's duly appointed representative, met with Colburn and Jerry Brewster, the Assistant Superintendent for Secondary Schools. Cavanaugh brought Beine's recent tax records and a statement of the officers of SBJ which Beine had provided to the Internal Revenue Service ("IRS") to explain his tax status. Beine's tax forms revealed he reported his salary from the Board on IRS Schedule C, which is used by sole proprietors/self-employed individuals to report a profit or loss from a business or profession. Beine's statement to the IRS indicated that (1) he was a member of SBJ; (2) all his actions were under its general control and direction; and (3) all compensation from his services, even when paid directly to him, was turned over to SJB in accordance with their rules, and was not personal income.[2]

During his investigation, Colburn obtained information that Beine had made misrepresentations on his employment ap-

1. On September 9, 1988, Beine also filed a Writ of Prohibition and a Writ of Mandamus. In his Writ of Prohibition Beine asked this Court to prevent the Board from instituting termination procedures, contending the issue was resolved by the court below. Beine's Writ of Mandamus requested immediate reinstatement. This Court stayed the termination proceedings, but took no other action pending final disposition of the appeal. These petitions are rendered moot by this decision and an order so stating has been issued.

2. Pertinent portions of the letter to the IRS stated:

This document will serve as confirmation of the appointment of F Jim Beine as Administrator, and Director of the Eastern Division [PO Bx 2266 / Huntington WV 25783–2266], with the assignments as written below.
As a member of the Community, all his actions are under the general control of the Community [501(a)(3) ], through the direction of its superiors who exercise their authority according to the laws of the Community and its traditions and customs. He is involved with the work of the Community by providing leadership, learning, and growth opportunities for youth. He is living a life of poverty and chastity, and under obedience.
All compensation from his services, even when paid directly to him, is turned over to the Community in accordance with the assignment procedures of the Community, and is the property of the Community, and controlled by it according to its own internal discipline and practice, and is not personal income. Further, he is personally exempt [# 4361] from Social Security [FICA] taxes.
F Jim Beine is hereby officially and formally assigned: [1] Instructor for Marshall University; [2] Professional Counselor for Cabell County Schools; [3] Resident Counselor for Time Out, a temporary home for teen-agers experiencing difficulty coping with their environments.
. . . .

plication. This information indicated Beine was fired from his last teaching position, had a history of emotional difficulties, and was no longer allowed to function as a Catholic priest.[3]

Colburn wrote Beine on August 28, 1985, terminating his contract with the Board "effective immediately."[4] The letter recited "facts" Beine had used to describe his employment status in his IRS materials, and concluded by terminating "the contract to provide consulting services heretofore provided by the Community of St. John Bosco through you.... effective immediately."[5] Essentially, the Board fired Beine without notice or right to any hearing based on the employment status he claimed with the IRS.

Beine wrote the Board on September 4, 1985, stating he did not recognize Colburn's right to discharge him. Beine continued to work until September 9, 1985. On September 10, 1985, a meeting was held with Beine; his West Virginia Education Association ("WVEA") representative;

Robert Frum, the Superintendent of Cabell County Schools; Cavanaugh; Brewster; and Ed McNeel, the Assistant Supervisor for Personnel. Frum requested that Beine submit a letter stating that he was not under the control of SJB and considered himself an employee of the school board. Beine did not submit the letter. On October 3, 1985, Beine's WVEA representative wrote the Superintendent asking "the exact status of Jim Beine's employment." The Board did not respond to this letter.[6]

Appellant Beine makes the following assignments of error:

1. The trial court erred in failing to award the appellant all of the damages resulting from the appellee's breach of contract.

2. The trial court erred in awarding the proper remedy upon finding the appellees breached the continuing contract of employment.

    A. The trial court erred in failing to automatically reinstate the appellant

---

**3.** The record reveals that Beine was educated and ordained as a Catholic priest, but that his privileges to function as a cleric have been revoked by the St. Louis and Charleston–Wheeling dioceses. We note that *Code of Canon Law*, § 290 (1983) begins, *"[s]acra ordinatio, semel valide recepta, numquam irrita fit"* which is translated as "[a]fter it has been validly received sacred ordination never becomes invalid." *Id.* The *Code of Canon Law* continues stating:

A cleric, however, loses the clerical state:
1. by a judicial decision or administrative decree which declares the invalidity of sacred ordination;
2. by the legitimate infliction of the penalty of dismissal;
3. by a rescript of the Apostolic See which is granted by the Apostolic See to deacons only for serious reasons and to presbyters only for the most serious reasons.
*Id.*

**4.** "The pertinent portions of the termination letter are as follows:

Dear Mr. Beine:
    As you are aware, your contract with the Cabell County School System has been officially represented by you and your authorized representative to be a contract, in essence, with the Community of St. John Bosco.
    From the documents which you kindly supplied to us the following facts are apparent:
    1. You receive no salary from the Cabell County Board of Education.

    2. Your tax returns demonstrate that you are self-employed in the business of the Community of St. John Bosco.
    3. You are under the control and direction of The Community of St. John Bosco.
    4. You are not authorized to act as a Priest for the Roman Catholic Church.
    5. The Community of St. John Bosco is not a religious institution.
    6. The Community of St. John Bosco is a Missouri not-for-profit corporation and not qualified to do business in the State of West Virginia.
    7. The Internal Revenue Service has been told by you under penalty of perjury that the foregoing is true.
    Therefore, in that the Cabell County Board of Education does not require the services of The Community of St. John Bosco, either directly or through you acting on its behalf, the Cabell County Board of Education does hereby terminate the contract to provide consulting services heretofore provided by The Community of St. John Bosco through you. This contract termination is effective immediately.

**5.** The minutes of the Board's meetings prior to this letter do not reveal a vote or discussion of Beine's termination.

**6.** Beine filed for unemployment in January of 1986. He stated in his deposition that he did not learn he was discharged until March of 1986 when the Department ruled he was eligible for benefits.

upon finding the appellees breached the continuing contract of employment.

B. The trial court erred in granting the appellees thirty (30) days to institute termination proceedings against the appellant.

3. The trial court erred in dismissing appellant's claim of religious discrimination.

4. The trial court erred in dismissing appellant's claim of outrageous and intentional conduct.

5. The trial court erred in dismissing the claim of false and misleading statements.

The Board makes the following cross-assignments of error:

1. The lower court erred in directing a verdict on the issue of the continuing contract.

2. The lower court erred in denying the defendants a hearing on the issue of failure to exhaust administrative remedies.

Although this case presents multiple issues, the key question is whether the Board properly terminated Beine's employment. Therefore, Beine's second assignment of error, involving whether there was a breach of the continuing contract by the Board and, if so, whether the court below erred in failing to grant immediate reinstatement, will be discussed first.

An examination of the contract between the parties and the statutes involved is a necessary backdrop to this discussion.

■ The "teacher's continuing contract" entered into between Beine and the Board provided in part:

(f) This contract made be terminated at any time by mutual consent of the parties.

(g) The power of the Board to suspend or dismiss the teacher for immorality, incompetency, cruelty, insubordination, intemperance, or willful neglect of duty, in pursuance of the provisions of the *West Virginia Code* § 18A-2-8 is in no manner impaired or affected.

. . . .

(i) This contract shall be subject to any and all existing state laws, West Virginia Board of Education policies, County Board of Education policies and such laws, rules and regulations as may hereinafter be enacted or adopted.

Chapters 18 and 18A of the *West Virginia Code* set forth state law governing education and school personnel. *W.Va. Code* § 18-1-1(g) [1980] defines teacher to mean "teacher, supervisor, principal, superintendent, public school librarian; registered professional nurse ... or any other person regularly employed for instructional purposes in a public school in this state."

*W.Va.Code* § 18A-1-1 [1980] makes this definition applicable to the provisions of chapter 18A, as well as defining classroom teacher as "[t]he professional educator who has direct instructional or counseling relationship with pupils, spending the majority of his time in this capacity." *Id. W.Va. Code* § 18A-2-2 [1989] provides that a continuing contract of employment may not be terminated unless it is

by a majority vote of the full membership of the board before April first of the current year, after written notice, served upon the teacher, return receipt requested, stating cause or causes, and an opportunity to be heard at a meeting of the board prior to the board's action thereon....

*W.Va.Code* § 18A-2-8 [1985] provides that:

Notwithstanding any other provisions of law, a board may suspend or dismiss any person in its employment at any time for: Immorality, incompetency, cruelty, insubordination, intemperance or willful neglect of duty, but the charges shall be stated in writing served upon the employee within two days of presentation of said charges to the board. The employee so affected shall be given an opportunity, within five days of receiving such written notice, to request, in writing, a level four hearing and appeals pursuant to provisions of article twenty-nine [§ 18-29-1 et seq.], chapter eighteen of the code of West Virginia, one thousand nine hundred thirty-one, as amended.

The Board maintains in this appeal that they relied on Beine's own representations to the IRS in determining that he was not their employee, but rather an independent contractor and therefore not entitled to the legal benefits of a professional school employee. The Board's alternative argument is that if Beine was a professional employee, he failed to exhaust his administrative remedies by not filing an educational employee grievance.

Clearly both by contract and statute, Beine was a teacher under continuing contract as defined by law, and as such was entitled to all of the contractual and legal rights to which one is entitled in West Virginia by virtue of that status, including the substantive and procedural rights provided by statute to challenge termination of a continuing contract by the Board.

The Board's attempt to label Beine as an independent contractor and then summarily dismiss him without the required due process clearly breached his continuing contract with the Board. The Board's failure to follow the procedures established by law in pursuing termination and their failure to afford Beine his statutory right to notice and hearing left the lower court little choice in its decision.

■ A school board must comport its actions in personnel matters to the substantive and procedural laws of this state. Even where an employee misrepresents or mischaracterizes his employment status with a third party, a school board cannot rely thereon in failing to live up to its legal obligations to such employee.

The circuit court was also correct it its determination that "statutory remedies were not available to the plaintiff because the defendant, Board of Education, failed to take the initial statutory steps necessary to terminate plaintiff's employment." Final Order at 2.

■ "The doctrine of exhaustion of administrative remedies is inapplicable where resort to available procedures would be an exercise in futility." Syl. Pt. 1, *State ex rel. Bd. of Educ. v. Casey*, 176 W.Va. 733, 349 S.E.2d 436, 437 (1986). "The exhaustion doctrine contemplates an efficacious administrative remedy." *Casey*, 176 W.Va. at 735, 349 S.E.2d at 438. Since the Board did not extend to Beine his rights under the law governing education employees, they were not in a good position to later contend he should have made use of that procedure in complaining.[7] Clearly, Beine's filing of this civil action instead of an employee grievance was appropriate under these circumstances.

■ We cannot, however, agree with Beine's assertion that he should have been automatically reinstated, and that the lower court erred in staying reinstatement for thirty days to give the Board time to institute termination proceedings pursuant to *W.Va.Code* § 18A-2-2 [1988]. The basis of his argument is that the issues raised in the administrative proceedings are the same ones resolved by the circuit court. This contention is inaccurate. There may have been good and valid grounds for the termination of Beine's contract. In fact, the court below specifically indicated it was making no finding as to whether good cause for dismissal existed, but rather was determining that the Board must follow proper procedures to do so.

■ Beine contends that the trial court erred in failing to award all the damages he sought. We find no merit to this contention. The proof of the damages in question was inadequate as a matter of law and the trial court was correct in its denial of them. A review of the record demonstrates that all damages that were properly submitted and proven were allowed by the circuit court.

■ In connection with assignments of error numbers three, four, and five, this Court has carefully reviewed the record for evidence to support Beine's claim that a directed verdict on the charges of religious

7. The WVEA's attorney had informed Beine that the manner of termination called into question Beine's standing as an employee and his right to file a grievance.

discrimination,[8] outrageous and intentional conduct, and misleading statements [9] was improper. We held in Syl. Pt. 2 of *Delp v. Itmann Coal Co.*, 176 W.Va. 252, 342 S.E.2d 219 (1986) that "[w]here a party is not entitled to recover in any view of the evidence, a verdict should be directed for the adverse party." The record before us does not reveal religious discrimination, outrageous and intentional tort, or false and misleading statements.

Therefore, for the reasons stated above, the final order of the Cabell County Circuit Court is affirmed.

Affirmed.

8. The only statement made to Beine concerning religion was "[y]ou are not authorized to act as a priest for the Roman Catholic Church." This sentence was in the dismissal letter, and was used by the Board to demonstrate that Beine was under the control of SBJ, not the Catholic Church.

9. The statements in the August 29, 1985 letter were shown by testimony not to be misleading.