403 S.E.2d 431

The FAYETTE COUNTY BOARD OF EDUCATION

v.

Alice LILLY and West Virginia Education and State Employees Grievance Board.

STATE of West Virginia ex rel. Alice LILLY

v.

The BOARD OF EDUCATION OF FAYETTE COUNTY and Randall Broyles, Superintendent of Schools.

No. 19773.

Supreme Court of Appeals of West Virginia.

March 14, 1991.

Leo Catsonis, Charleston, for Alice Lilly.

Irwin Conrad, Conrad & Clay, Fayetteville, for Fayette County BOE.

PER CURIAM:

This case arises from the discharge of Alice Lilly from her teaching position by the Board of Education of Fayette County. Although Ms. Lilly requested a level four hearing before the West Virginia Education and State Employees Grievance Board, the grievance examiner declined to rule based on a perceived lack of jurisdiction. Both parties sought assistance from the Circuit Court of Fayette County, which remanded the case to the Board of Education for hearings and a decision on the termination. Ms. Lilly appeals and we reverse and remand the case to the grievance board for a level four hearing.

On July 21, 1989, Randall Broyles, Superintendent of the Fayette County Schools, recommended to the Board of Education that "the administration be granted authority, according to the law, to send a letter of termination to a Fayette County Board of Education employee stating the reasons for termination with the provision that the individual has the option of a Level IV hearing." The minutes of the Board's meeting state: "Mr. Arritt [President of the Board] noted that the Board had received this information and authorized the administration to proceed." No formal vote was taken.

By letter dated July 24, 1989, Mr. Broyles notified Ms. Lilly, a fourth grade teacher with about 10 years experience in Fayette County and 25 years additional teaching experience, "that recommendation has been made in regard to your termination due to incompetence." The letter advised Ms. Lilly that she could "request, in writing, a level four hearing and appeal pursuant to ... the Grievance Procedure."

On August 4, 1989, Ms. Lilly requested a level four hearing with the grievance board. By letter dated August 18, 1989, Mr. Broyles notified Ms. Lilly that she was suspended without pay pending disposition of the dismissal charges.

Although the September 19, 1989 grievance hearing began with testimony on the reasons for Ms. Lilly's discharge, the hearing was continued after the grievance examiner discovered that the Board of Education had not formally voted on Ms. Lilly's discharge. By letter dated September 20, 1989, Mr. Broyles informed Ms. Lilly that the Board of Education, in a special meet-

ing, continued her suspension until the conclusion of the level four hearing.

On November 28, 1989, the grievance examiner held that the grievance board was without jurisdiction until the Board of Education acted on the termination recommendation. The grievance examiner also declined to rule on Ms. Lilly's motions for reinstatement and back pay. The Board of Education appealed the grievance board's decision and Ms. Lilly sought a writ of mandamus to compel the Board of Education to reinstate her. The circuit court reversed the decision of the grievance examiner and remanded the case to the Board of Education "for hearings and a decision concerning the termination proceeding ... against Alice Lilly." The circuit court also denied Ms. Lilly a writ of mandamus because she did not "have a clear right to be reinstated." Ms. Lilly appeals and we now reverse.

## I

Chapters 18 and 18A of the *West Virginia Code* set forth the state law governing education and school personnel. The two procedures for terminating the continuing contract of a teacher are found in *W.Va. Code*, 18A–2–2 [1989] and 18A–2–8 [1985].[1] *W.Va. Code*, 18A–2–2 [1989], provides that a teacher's continuing contract may not be terminated unless:

> ... (1) by a majority vote of the full membership of the board before April first of the then current year, after written notice, served upon the teacher, return receipt requested, stating cause or causes, and an opportunity to be heard at a meeting of the board prior to the board's action thereon, or (2) by written resignation of the teacher ... Provided, ... that this section shall not affect the powers of the school board to suspend or

dismiss a principal or teacher pursuant to section eight [§ 18A–2–8] of this article. *W.Va. Code*, 18A–2–8 [1985] provides that:

> Notwithstanding any other provisions of law, a board may suspend or dismiss any person in its employment at any time for: Immorality, incompetency, cruelty, insubordination, intemperance or willful neglect of duty, but the charges shall be stated in writing served upon the employee within two days of presentation of said charges to the board. The employee so affected shall be given an opportunity, within five days of receiving such written notice, to request, in writing, a level four hearing and appeals pursuant to provisions of article twenty-nine [§ 18–29–1 et seq.], chapter eighteen of the code of West Virginia, one thousand nine hundred thirty-one, as amended.[2]

Under *W.Va. Code*, 18A–2–7 [1990], the superintendent has the authority, subject to the board of education's approval, to suspend or to recommend the dismissal of school personnel. However, "[t]he superintendent's authority to suspend school personnel shall be temporary only pending a hearing upon charges filed with the board of education and such period of suspension shall not exceed thirty days unless extended by order of the board." *W.Va. Code*, 18A–2–7 [1990].

■ In the present case, Mr. Broyles recommended on July 21, 1989, that the Board of Education terminate Ms. Lilly's employment contract. The minutes of the meeting show that Mr. Broyles recommended sending a termination letter with the provision for a level four hearing. Mr. Broyles' recommendation to the Board of Education mirrors the dismissal language of *W.Va. Code*, 18A–2–7 [1985]. When the Board authorized Mr. Broyles to proceed, the Board, in fact, approved the dismissal of

---

**1.** In 1990, the legislature amended both *W.Va. Code* 18A–2–2 and 18A–2–8. Neither amendment affects the procedures for a dismissal based on a charge of incompetency.

**2.** Before the 1985 enactment of the grievance procedure, *W.Va. Code* 18–29–1 *et seq.* [1989], *W.Va. Code* 18A–2–8, similar to *W.Va. Code*, 18A–2–2 [1989], required a board of education to provide, on request, a hearing of the suspension

or dismissal charges before the board. *W.Va. Code*, 18A–2–8 [1969] provided in pertinent part:

> ... [T]he employee so affected shall be given an opportunity to be heard by the board upon not less than ten days' written notice which charges and notice shall be served upon the employee within five days of the presentation of the charges to the board.

Ms. Lilly.[3] A formal vote of the Board would have definitively indicated the Board's approval of Ms. Lilly's dismissal. However, given that the Board is no longer required under *W. Va. Code*, 18A–2–7 [1985], to provide a hearing before dismissal, the Board's authorization to Mr. Broyles to proceed shows the Board's approval of Ms. Lilly's dismissal. In addition the Board knew that Ms. Lilly's dismissal letter offered the opportunity for a level four hearing before a grievance examiner.[4]

■ Mr. Broyles's letter dated July 24, 1989, also mirrors the language in *W. Va. Code*, 18A–2–7 [1985], by offering a level four hearing to Ms. Lilly. Ms. Lilly's request for a level four hearing was based on her dismissal. The circuit court's determination that Ms. Lilly's hearing request was based on her suspension is wrong. All the actions taken in July 1989 by the Board of Education and Mr. Broyles show that Ms. Lilly's contract was terminated. Indeed, Ms. Lilly's temporary suspension did not occur until 14 days after she requested the level four hearing. The temporary suspension is authorized under *W. Va. Code*, 18A–2–7 [1990], "only pending a hearing upon charges filed by the superintendent with the board of education...." Based on Ms. Lilly's hearing request, the superintendent had authority to suspend Ms. Lilly for thirty days. Ms. Lilly's extended suspension by the Board of Education did not occur until the Board's September 20, 1989 special meeting, the day after the level four hearing and about 6 weeks after Ms. Lilly's hearing request.

■ The circuit court's decision to remand the case to the Board of Education for a hearing on the charges against Ms. Lilly serves no purpose. The legislature recognized the futility of a hearing before a board of education on the charges speci-

fied in *W. Va. Code*, 18A–2–7 [1985], and provided independent grievance procedures. "We stress again ... [that] the grievance procedures set out in W.Va.Code, 18–29–1 *et seq.*, are to be given a flexible interpretation in order to carry out the legislative intent." *Spahr v. Preston County Bd. of Educ.*, 182 W.Va. 726, 391 S.E.2d 739, 743 (1990); *Duruttya v. Bd. of Educ. of County of Mingo, supra* n. 3. Indeed, "[t]he legislative intent expressed in W.Va.Code, 18–29–1 (1985), is to provide a simple, expeditious and fair process for resolving problems." Syllabus Point 3, *Spahr supra.*

■ In this case the grievance procedures provide a simple, expeditious and fair process for examining the charges against Ms. Lilly and she should not be required to participate in a hearing before the Board of Education—an exercise in futility. *See* Syllabus Point 1, *State ex rel. Bd. of Educ. v. Casey*, 176 W.Va. 733, 349 S.E.2d 436 (1986); *in accord*, Syllabus Point 2, *Beine v. Bd. of Educ. of Cabell County*, 181 W.Va. 669, 383 S.E.2d 851 (1989).

■ The grievance examiner's determination that the grievance board lacked jurisdiction is also wrong because *W. Va. Code*, 18A–2–7 [1985], authorizes a level four hearing for an employee suspended or dismissed by a board of education. Although a grievance does not arise until a board of education acts, the grievance examiner failed to acknowledge that the Board of Education authorized the superintendent to dismiss Ms. Lilly. Because the record indicates that the Board of Education approved Ms. Lilly's dismissal, the hearing examiner should have proceeded with a level four hearing on the charges against Ms. Lilly.[5] In Syllabus Point 2, *Duruttya supra* n. 3, we stated:

---

3. Unlike *W. Va. Code*, 18A–2–2 [1989], *W. Va. Code*, 18A–2–7 [1985], does not specifically require a majority vote of the full membership of the board.

4. *See Duruttya v. Bd. of Educ. of County of Mingo*, 181 W.Va. 203, 382 S.E.2d 40 (1989), for a description of a dismissal procedure that included notice that the superintendent intended to request a teacher's dismissal at a board of

education meeting and a subsequent letter advised the teacher of the board of education's action. In *Duruttya*, we held that the notice of a right to a level four hearing in the dismissal letter "must include instructions on where this request is to be filed." Syllabus Point 1, *Id.*

5. Because the record, at this time, does not indicate that the Board of Education lacked good reasons for dismissing Ms. Lilly, her re-

In the absence of any evidence of bad faith, a grievant who demonstrates substantial compliance with the filing provisions contained in W.Va.Code §§ 18A–2–8 and 18–29–1, *et seq.* (1988) is entitled to the requested hearing.

*In accord* Syllabus Point 4, *Spahr supra.*

We find that based on the Board of Education's authorization of Ms. Lilly's dismissal, Ms. Lilly is entitled to a level four hearing and we, therefore, reverse the circuit court's ruling denying her a level four hearing and remand this case for proceedings consistent with this opinion.

Reversed and remanded.

quests for reinstatement and backpay are pre-